·Ellis v. Stone, 21 N. M. 730.

[No. 1825, May 1, 1916.]
· [On Motion for Rehearing, June 27, 1916.]
# ELLIS et al. v. STONE.

## SYLLABUS BY THE COURT.

1. Where a writing in the nature of a contract is signed by a person, and contains apt words to bind him personally, the fact that to such signature is added such words as "trustee," "agent," "president," and the like, does not change the character of the person so signing, but are merely descriptive of him.

P. 737

2. The rule of descriptio personae is not applicable where the instrument on its face shows that the descriptive words were not used to describe the person, but to characterize the capacity in which he made the contract.

P. 739

3. Where a simple contract is ambiguous as to the identity of the real parties thereto, the ambiguity will first be attempted to be solved from what appears upon the instrument itself, taking into consideration not only the words and figures in the body thereof, and the signatures and additions thereto, but any printed or written headings, memoranda in the margin, or other indicia which will serve to throw light on the intention of the parties.

P. 740

4. Where upon the face of a simple contract doubt is rendered as to who is bound thereby, parol evidence may be employed to determine whose contract it is.

P. 741

5. An agent, acting within the scope of the authority conferred upon him by the principal, is not to be held personally liable on the contract simply because the contract between the principal and the third party is invalid on account of lack of power in the principal to make such a contract where the extent of power possessed by the principal is a matter of public law.

P. 743

Ellis v. Stone, 21 N. M. 730.

6. The rule that the construction placed upon a contract by the parties thereto by their acts will be generally adopted by the court is not applicable to this case, because no harmonious construction thereof was adopted by the parties.

P. 746

7. Where the trial court determined the issues of the case upon the pleadings and proof, it is no cause for complaint that the court followed the ruling of another judge on a demurrer filed therein.

P. 746

Appeal from District Court, Roosevelt County; John T. McClure, Judge.

Action by John Ellis and another, administrators of the estate of George Ellis, deceased, against Lula Stone. From a judgment for defendant, plaintiffs appeal. Affirmed.

George L. Reese of Portales, for appellants.
E. R. Wright of Santa Fe, on brief for rehearing.

Addition of descriptive words to a signature does not change prima facie individual liability thereon.

2 C. J., Agency, sec. 338, p. 683; Mechem on Agency (2d ed.) secs. 1408, 1419; 1 Am. & Eng. Ency. L. (2d ed.) 1043; Peterson v. Homan, 44 Minn. 166. 20 Am. St. Rep. 564; Tilden v. Barnard, 43 Mich. 376, 38 Am. Rep. 197; Rendell v. Harriman, (Me.) 46 Am. St. Rep. 421; Hall v. Jameson, 151 Cal. 606, 91 Pac. 518; Knickerbocker v. Wilcox, (Mich.) 21 Am. St. Rep. 595; Campbell v. Porter, 61 N. Y. S. 612, 46 App. Div. 628; Murphy v. Helmrich, 66 Cal. 69, 4 Pac. 958; Small v. Elliott, (S. Dak.) 76 Am. St. Rep. 630; Rhone v. Powell, (Colo.) 36 Pac. 899.

If after resort to extrinsic evidence ambiguity of guaranty still remains, the writing should be most strongly construed against the guarantor.

20 Cyc. 1424; Lamb v. Colcord, (Okla.) 19 L. R. A.
(N. S.) 901; Lean v. Geagan, (Cal.) 128 Pac. 792; London & S. F. Bank, Limited, v. Parrott, 58 Pac. 164.

Bank must have authority to execute instrument before the person signing same as its president can escape liability.

Knickerbocker v. Wilcox, (Mich.) 21 Am. St. Rep.
595; Tilden v. Barnard, (Wash.) 38 Am. Rep. 197; Merrill v. Young, (Kans.) 47 Pac. 187; Fairbanks v. Owensboro Wagon Co., 72 Ill. App. 530; Bush v. Cole, (N. Y.)
84 Am. Dec. 343; Hobson v. Hassett, (Cal.) 9 Am. St.
Rep. 193; McKensey v. Edwards, (Ky.) 3 L. R. A. 397;
Brockway v. Allen, 17 Wend. 40; Taft v. Brewster, 9
Johns. 334; McClure v. Livermore, 78 Me. 390.

Construction of contract adopted by parties must prevail.

Fraser v. State Savings Bank, (N. M.) 137 Pac. 592;
Rice et al. v. McCague, (Neb.) 86 N. W. 486; 6 R. C. L.
Contracts, sec. 241, p. 852, and authorities cited.

T. E. MEARS of Portales and REID & HERVEY and GEO
S. DOWNER, all of Roswell, for appellee.

The instrument being signed by the president of a bank,
the presumption is that it is the obligation of the bank.

Elliott on Contracts, vol. 4, par. 3836; Daniel on Negotiable Instruments, vol. 1, par. 417; Morse on Banks
and Banking, par. 158, 1170; Stanford Bank v. Ferns,
17 Conn. 259; Holland v. Johnson, 16 Ga. 458; Erwin
Lane Paper Co. v. Farmers Nat. Bank, 30 N. E. 411, 30
A. S. R. 246; Hodge v. Farmers Bank, 34 N. E. 123;
Pratt v. Topeka Bank, 12 Kans. 570; Foelger v. Chase,
18 Pick. (Mass.) 63; Webster v. Ray, 27 N. W. 644, 56
A. R. 754; Patchin v. Bank, 19 N. Y. 312 ; Houghton v.
First Nat. Bank, 26 Wis. 663, 7 Am. Rep. 107; note in
21 L. R. A. (N. S.) 1079; 10 Cyc. 1030 and cases.

Mistake of law as to principal's liability cannot bind
the agent.

Ellis v. Stone, 21 N. M. 730.

Clark & Skyles on Agency, vol. 2, par. 582; Mechem on Agency (2d ed.) par. 1386; Abeles v. Cochran, 22 Kans. 405, 31 Am. Rep. 194; 10 Cyc. 1037, and cases; Humphrey v. Jones, 71 Mo. 62; Merchants Packet Co. v. Strenby, (Miss.) 124 Am. St. Rep. 651; Michael v. Ade, 84 Mo. 578; McCready v. Eshelmay, 4 Wash. 760; Western Cement Co. v. Jones, 8 Mo. App. 373; Sanford v. McArthur, 57 Ky. 411; Thilmany v. Iowa Paper Bag Co., 75 Am. St. Rep. 259.

In construing contract marginal notes, etc., appearing on paper should be considered.

Elliott on Contracts, vol. 4, par. 2841, and cases; Kessell v. Austin Min. Co., 144 Fed. 859; Roelle Gr. Co. v. Pullman Co., 50 S. E. 1008; Anderson v. English, 94 N. Y. S. 201; Mechem on Agency (2d ed.) vol. 1, par. 1135.

## OPINION OF THE COURT.

HANNA, J.—This is an action brought by John Ellis and William I. Shriver, administrators of the estate of George Ellis, deceased, against Lula Stone, executrix of the estate of James P. Stone, deceased. The action is based upon a letter written by James P. Stone which plaintiffs, appellants here, assert constitutes a guaranty on the part of James P. Stone to discharge and satisfy an indebtedness owing the Ellis estate by W. W. Humble, represented by a promissory note executed by said Humble in favor of George Ellis, deceased.

The evidence in behalf of appellants is obscure in many respects. On account of certain contentions made by appellants it becomes necessary to review the evidence in greater detail than we would otherwise feel justified in doing. On the part of the appellants the evidence tended to show the following:

William I. Shriver and James P. Stone first met in the latter part of 1907 at El Dorado, Kan. Shriver made a loan to Stone personally, and at that time represented that he (Shriver) was then loaning money belonging to his brother-in-law, George Ellis. Subsequently Stone returned to New Mexico, and some time in 1908 wrote to Shriver requesting the latter to make three separate loans,

one to A. S. Morrison, one to W. W. Humble, and one to another individual whose name could not be recalled, the first and second loans to be in the sum of $2,500 each, secured in one instance by bank stock, and in the other by stock of a corporation doing a mercantile business, and the third loan in the sum of $5,000 to be secured by a mortgage on certain hotel property. Shriver, not being acquainted with the persons for whom the loans were sought, nor with values in New Mexico, wrote to Stone and declined to make any of the three loans except the Morrison one, saying, however, in effect that, if Stone was of the opinion that the security for the Humble note was satisfactory, a loan would be made to Humble. On September 3 ,1908, Stone, in response to the last-mentioned communication, wrote the following letter:

"8346
"The Citizens' National Bank of Portales.
"J. P. Stone, President.
"B. Blankenship, Vice Pres.
"S. A. Morrison, Cashier.
"J. A. Fairley, Asst. Cashier.
"Capital $50,000
"Portales, New Mexico, September 3, 1908.
"Mr. William Shriver, El Dorado, Kansas.—Dear Sir:   I to-day send you two loans for $2,500 each as per our agreement.   I also send receipt that you may sign for the protection of our customers in case of death.   In regard to the hotel loan, I consider it a very liberal loan as the property is well worth $10,000 and party carries $6,000 insurance on same, but I think I can get the other $5,000 on different security. Of course, we will be responsible to you for any loan that I might send you.   When I make the other loans I will forward same to you, and make draft through your bank for the amount.   And if there is anything that is not satisfactory just let me know and I will make it right.   I would be glad for you to make a trip down in this part of the country this fall, and see me, if you can let me know about what time you can come, so I will be sure to be here.

"I make draft on you through your bank in order that we may run same on our books as remittances for collection. With kindest regards to yourself and Mr. Green, I am
"Very truly yours, J. P. Stone, President."

On the day this letter was received Shriver accepted a draft in favor of the Citizens' National Bank of Portales, and thereupon received the notes executed by A. S. Morrison and W. W. Humble, respectively, together with the

collateral attached thereto. While the evidence on this point is vague and uncertain, it inferentially appears that the notes and collateral were transmitted either to the First National Bank of Kansas City, Mo., the drawee, or to the Farmers' & Merchants' National Bank of El Dorado, of which latter bank William I. Shriver was cashier, with instructions to deliver the same to Shriver upon the acceptance by him of draft in the sum of $5,000, payable to the Citizens' National Bank of Portales. The proceeds of that draft were subsequently transmitted to the last-named bank. It was shown that prior to the consummation of these loans Humble was largely indebted to the Citizens' National Bank of Portales, and was unable to discharge that indebtedness. Stone and Humble had a conversation in which Stone advised Humble that the bank was "hard up," and needed the money which Humble owed it, and that he thought he could procure a loan for Humble, providing the latter furnished good and ample security therefor, saying that "he (Stone) would have to stand for it," meaning that Stone would have to be responsible for the loan. At that time Humble was not indebted to Stone, but owed the New Mexico bank, of which Stone was the managing head, a considerable amount of money.

Some time shortly prior to September 3, 1909, Humble wrote to Shriver advising him that he would be unable to pay the promissory note which he he had previously executed in favor of Shriver or Ellis, and apparently asked for an extension of time. This letter was sent by Shriver to Stone, together with a renewal note, with instructions to effect a renewal of the first note upon the payment of the interest then due. This Stone did, accepting from Humble $250 as interest on said note, which money was transmitted to Shriver or Ellis either by the Citizens' National Bank of Portales or Stone. No further communication passed between Stone and Shriver until August 16, 1910, some 13 days before the renewal note became due, when Stone wrote Shriver advising that the Humble note be sent to him—

"so that we may proceed to collect same by law in the event he does not pay same when due, which I think he will not do now. I think we had better look after it promptly and make it out of his property if he does not pay and would prefer to lose no time on same."

The Humble note and security were then sent to Stone, but apparently the note was not paid when due, and was subsequently placed in the hands of an attorney for collection and suit, which was authorized by Shriver. On October 11, 1910, Shriver wrote to Stone, saying in part:

"I hold a letter signed by you as president of the bank saying you would be responsible for the loans you make for us. And for that reason gave the matter no attention, as I looked for the pay to come through you."

Subsequently suit was brought on the note, confession of judgment obtained from Humble and his wife, judgment entered thereon, and execution issued which was returned nulla bona.

Subsequent to this time a second suit was brought, in attachment, in Texas, against Humble, for the purpose of subjecting certain lands alleged to be owned by him to the payment of the judgment indebtedness. Shriver refused to authorize the execution of an attachment bond which in any manner would make him liable in damages, but apparently one was executed, at the solicitation of the attorney having the matter in charge, by some person other than Shriver. The costs of these suits were paid by the attorney. Shriver admitted at the trial of this case that all letters written by Stone to him were upon stationery bearing the letter head of the Citizens' National Bank of Portales or a bank of Elida, N. M., of which Stone was an officer. The evidence on behalf of the defendant tended to show that in the early part of 1914 Shriver and an attorney then in his employ had a conversation in Portales in which the terms of the letter of September 3, 1908, were discussed, and that Shriver then said he regarded that letter as constituting a guaranty on the part of the Citizens' National Bank of Portales, not an obligation of Stone personally, but that that question had not received his consideration before that time, and that he had not consulted an attorney concern-

ing it.  It should be remarked that for many years Shri-
ver had been engaged in the business of banking, and
claimed to have had knowledge for that length of time
that a national bank had no power to guarantee paper for
others in which it had no interest.

[1] The case turns upon the single question of the
identity of the guarantor of the contract of September 3,
1908.  Whose contract is it?  Is J. P. Stone the guar-
antor?  An answer to this question will fully dispose of
the case.  On the part of the appellants it is contended
that the guarantor is J. P. Stone, which is denied by the
appellee.  Appellants base their contention upon three
distinct grounds:  First, the obligation is prima facie
that of Stone, the word "president" simply being descrip-
tive of the person of Stone, which does not relieve him
of personal liability thereon; second, if the contract be
held to be ambiguous, it must nevertheless be held to be
the personal obligation of Stone, for the reason that,
where such ambiguity exists, a construction most favor-
able to appellants must be made; and, third, Stone having
no authority to bind the Citizens' National Bank of Por-
tales, of which institution he was president, because the
principal had no power to enter into such a contract, he
must be held personally bound thereby.  The complaint
seeks to obtain relief against Stone personally, on the the-
ory that the contract of September 3, 1908, was the per-
sonal obligation of Stone, while the answer endeavors to
avoid that liability by pleading that Stone was the presi-
dent of the Citizens' National Bank of Portales, and that
the obligation was executed by him for the bank in a
representative capacity.

In the first place, unquestionably the contract of Sep-
tember 3, 1908, whoever may be held to be the parties
thereto, is one of guaranty.  It provides, in effect, for the
payment of certain notes executed and to be executed by
others in favor of Ellis or Shriver, in the event that the
makers default in the payment thereof according to the
terms of said instruments.  In that respect the promise
is collateral to a principal obligation of another, and is
not a direct promise, without condition or independent of

contingencies, to pay the debts referred to. It is there-fore a guaranty within the meaning of the law. As to what constitutes a guaranty, see 5 Elliott on Contracts, § 3930; 20 Cyc. 1397; 1 Brandt, Suretyship & Guaranty, § 1; Pingree on Suretyship & Guaranty (2d ed.) § 339; and cases cited under title "Guaranty" at section 1, 25 Century Digest.

The obligation involved in the case at bar was written upon stationery bearing the printed letter head of the Citizens' National Bank of Portales, wherein appeared the names of the officers thereof, including that of "J. P. Stone, President." The writing was signed by J. P. Stone, to which was added the word "President." Because of this method of execution appellants assert that the obli-gation is prima facie that of J. P. Stone. Where a writ-ing in the nature of a contract is signed by a person, and contains apt words to bind him personally, the fact that to such signature is added such words as "trustee," "agent," "treasurer," "president," and the like does not change the character of the person so signing, but is con-sidered as merely descriptive of him. For a statement of the rule of descriptio personae see 1 Mechem on Agency (2d ed.) §§ 1170, 1408, 1419; 1 Amer. & Eng. Enc. Law (2d ed.) 1043; 31 Cyc. 1414; 2 C. J. 683. The mere fact that a person sustains an agency relation to another does not prevent him from becoming personally liable on a contract with a third person, and, if it appears from the contract that he pledged his own credit or bound him-self personally, the addition of such words as "president" and the like will be considered as mere descriptio per-sonae. 2 Clark & Skyles on Agency, 1123. Thus a con-tract providing that A. guarantees the payment of a cer-tain note of a third party and signed A., Agent." would be subject to the rule of descriptio personae, and the ob-ligation would be prima facie that of A., notwithstanding the addition of the word "Agent." But a hypothetical statement of facts where the rule would not apply would be where the contract provided that A., by his agent, B., guarantees the payment of the foregoing note, signed "B., Agent," because not only are there no apt words within

the body of the writing to bind the agent personally, but the the evident intention was to bind the principal. It is thus apparent that that portion of the rule ·which requires that before a contract can be adjudged to be the prima-facie obligation of one signing his own name thereto, and adding descriptive words, the body of the contract must contain apt words to bind the signer personally, and this seems consonant to all reason and common sense.

[**2**] The application of the rule of descriptio personae is also subject to the rule that:

"Where ·the instrument on its face shows that such words are not simply descriptio personae, ·they will · be given their proper force and effect." 31 Cyc. 1415.

In Avery v. Dougherty, 102 Ind. 443, 2 N. E. 121, 52 Am. Rep. 680, a lease contract reciting in the introductory clause that the agreement was between "Randolph Marshall, agent of Oliver Dougherty," and signed "Randolph V. Marshall, agent of O. R. Dougherty," was held not subject to the rule of descriptio personae, because:

"While accepting the general rule to be that stated, the American authorities agree that, if the contract itself shows that the words were not used as merely descriptive of the person, they will not· be so regarded, but will be assigned their real meaning."

See, also, other cases cited under text in 31 Cyc. 1415. The contract involved in this case cannot be held to be the prima facie personal obligation of Stone. An inspection of the writing makes this manifestly apparent. It discloses the utmost informality on the part of the maker thereof. The personal pronoun "I" is used therein more than ten times, and without doubt refers in each instance to J. P. Stone, the author of the writing. The pronoun "me," referring to Stone, is used several times, as is the personal pronoun "our." The important sentence of the writing is: "Of course, we will be responsible to you for any loans that I might send you." The objective of the pronoun "we" is not specifically made known in the writing. However, the writing discloses a strong probability that the Citizens' National Bank of Portales alone was intended by such language. In several portions of the letter

reference is made to that institution by using the word
"our," and in no instance does the writer refer to himself
as an individual in the plural sense. Because of the great
uncertainty, however, of the real and true identity of the
object of such pronoun, and because of the fact that we
feel that we cannot attach to such sentence any sound
judicial certainty, because of the ambiguity resulting from
the use of the word when considered in conjunction with
the entire writing, we hesitate to declare that the writing
on its face discloses an intention to bind one other than
J. P. Stone personally, and prefer to hold that resort must
be had to matter aliunde the body of the instrument in
order to arrive at the true intention of the parties. The
only justification for referring to the Citizens' National
Bank of Portales at all lies in the fact that the writing is
upon stationery bearing the letter head of that institution.

[3] In the course of their argument the appellants
contend that the printed letter head is no part of the
contract, and that reference thereto cannot be made for
purposes of construing it, because of the inconsistency be-
tween the written and printed portions thereof. The rule
is invoked upon the theory that the written portion of the
contract is inconsistent with the letter head, which, as we
have shown, is not the case. At least, in the absence of
explanation as to the meaning of the pronoun "we," the
written portion cannot be said to provide for the personal
liability of Stone; hence, admitting that the printed let-
ter head is some evidence on the subject, the rule is not
applicable. The appellant cites a number of cases sus-
taining the rule, with which cases we do not quarrel. One
of them is that of R. G. Menz Lbr. Co. v. McNeeley. 58
Wash. 223, 108 Pac. 621, 28 L. R. A. (N. S.) 1007.
There appellant sued to recover damages for failure to
deliver lumber and shingles according to contract. The
acceptance of the order for such materials was written
upon stationery bearing the letter head of the acceptor
and other matter concerning its business, including the
following:

"Quotations subject to change without notice. Contracts
made at home office and contingent upon exigencies of trans-
portation and accidents beyond our control."

The written portion of the acceptance was absolute, and no reference was made therein to the printed portions contained within the letter head. Manifestly the rule applied to that sort of a case, but is not applicable to this case. In 4 Elliott on Contracts, § .2837, it is said:

"But a simple contract may be ambiguous as to the real parties. When it is so the court will solve the ambiguity, if possible, from the instrument itself, taking into consideration not only the words and figures in the body thereof, and the signatures and additions thereto, but any printed or written headings, memoranda in the margin, or other indicia which may serve to throw light upon the question of intention."

See, also, section 2841 of the same volume and work, and the following cases: Anderson v. English, 105 App. Div. 400, 94 N. Y. Supp. 200, 202; Second National Bank v. Midland Steel Co., 155 Ind. 581, 58 N. E. 833, 52 L. R. A. 307; Sayre v. Nichols, 7 Cal. 535, 68 Am. Dec. 280; Hitchcock v. Buchannan, 105 U. S. 416, 26 L. Ed. 1078; Gillig Matt Co. v. Lake Bigler Road Co., 2 Nev. 214, and Carpenter v. Farnsworth, 106 Mass. 561, 8 Am. Dec. 360.

In the case last cited the court said that:

"The court has always laid hold of any indication on the face of the paper, however informally expressed, to enable it to carry out the intentions of the parties."

We are therefore justified in looking to the letter head as a fact to be considered in determining the identity of the guarantor or the intention of the parties with reference thereto. While the letter head makes known that J. P. Stone was president of the Citizens' National Bank of Portales, it does not establish, either conclusively or otherwise, that Stone was acting as president of that bank in this transaction. While the inference arising from such fact may strongly tend to support the conclusion that he was acting for that institution in this transaction, it is too doubtful to permit of sound judicial construction to that effect.

[4] Looking to the entire instrument, we cannot say that Stone was acting for the bank or for himself, but

must say that the instrument and the meaning of the parties to be gathered therefrom are too uncertain to declare liability either way; hence resort must be had to evidence aliunde the instrument to ascertain the true intention of the parties.

In 1 Mechem on Agency (2d ed.) § 1176, it is said:

"* * * Where the contract is so framed as to render it uncertain whether the agent or the principal was intended to be bound, parol evidence may be received to show that it was the intention to bind the principal, and not the agent."

The text is supported by several cases, among them being Mechanics' Bank of Alexandria v. Bank of Columbia, 5 Wheat. 326, 5 L. Ed. 100, where the court said:

"But it is enough for the purposes of the defendant to establish that there existed on the face of the paper circumstances from which it might reasonable be inferred that it was either one or the other (meaning either a bank or individual transaction.) In that case it became indispensable to resort to intrinsic evidence to remove the doubt."

In Eddy v. American Amusement Co., 9 Cal. App. 624, 99 Pac. 1115, the court said:

"The rule is well settled that, where a reading of a simple contract. however inartificially it may be drawn, discloses that it is executed for and on behalf of a principal, or discloses an intent to bind such principal, or even leaves the matter one of doubt. parol evidence may be employed to determine whose contract it is. * * * "

In Southern Badge Co. v. Smith (Tex. Civ. App.) 141 S. W. 185, 188, the court said:

"If, however, 'the suggestions furnished by the instrument render it ambiguous. so that it is uncertain whether it was intended to bind the principal or the agent, or both, parol evidence of the circumstances attending its execution is admissible to show the real understanding.' "

See, also, 4 Elliott on Contracts, § 2837, and Small v. Elliott, 12 S. D. 570, 82 N. W. 92, 76 Am. St. Rep. 630.

This is precisely the version of the law taken by the trial court. It received parol evidence in order to determine whether the intention of the parties was to bind the principal, the bank, or the signer, Stone, individually.

Ellis v. Stone, 21 N. M. 730.

It found that there was a conflict of evidence on the question, and seemingly indicated that in reality Stone intended to bind the bank, while appellants intended that Stone should be bound; hence an apparent failure of meeting of minds. But it resolved the conflict in favor of the representatives of Stone, holding, in effect, that there was substantial evidence to indicate that the writing was not intended to bind Stone personally. Appellants do not contend that there is no substantial evidence to support that finding. As a matter of fact, they made no objection to that finding, or its equivalent. We therefore hold that the trial court did not err in decreeing that the instrument involved in this case was not the personal obligation of Stone.

[5] But it is contended that the trial court should have found that the writing bound Stone personally, because, assuming that Stone executed the instrument for and on behalf of the Citizens' National Bank of Portales, the bank had no power to enter into such a contract, and, the obligation having been put out as binding on some one, Stone should be held. In other words, we are asked to hold that Stone must be bound because his principal had no power to enter into such a contract, notwithstanding that the contract has been held to negative any personal liability on the part of Stone. It should be said here that, while appellants, in making this contention, assume that the bank was the principal and that the contract was that of the bank, we do not so find. The bank is not a party to this suit, and nothing said in this opinion shall be construed as determining its liability on the writing in any sense. But assuming, as do appellants, that the obligation was intended to bind the bank and was executed for it though the agency of Stone, should Stone be held personally liable thereon? There are cases in which he would be so held. Much reliance is placed upon the case of Knickerbocker v. Wilcox, 83 Mich. 200, 47 N. W. 123, 21 Am. St. Rep. 595. In that case Wilcox, cashier of a national bank, by letter requested another bank to execute, as surety, a bond for one of "our" customers. The letter was signed by Wilcox, to which

was added the word "Cashier." The court held that the
paper upon its face showed that it was a transaction in
which a national bank could not lawfully engage; that
the writing of the letter would not lightly be assumed to
have been a mere idle ceremony, but that the parties in-
tended that it should have some effect; that the rule that
the writing was not binding on the agent personally, Wil-
cox, because of a mutual mistake of law concerning the
power of the principal, the bank, was not applicable be-
cause it did not clearly appear that Wilcox was claiming
to act for the bank and was not intending to bind him-
self. The court thereupon held that the prima facie pre-
sumption of personal liability flowing from the writing
had not been rebutted by Wilcox, and held that he was
personally liable thereon. Other cases cited by appellants
are equally distinguishable from the one at bar. But the
rule for which appellants contend, under the facts of this
case, is unsound in reason. If the writing executed by
an agent for his principal is not of binding force between
the principal and the third person, and does not contain
apt terms to bind the agent personally, or was never in-
tended to bind him personally, we see no good reason for
decreeing that the agent should be bound, and thereby
make a contract for the parties. The agent, when acting
within the scope of his authority, is the mere mouthpiece
of his principal. It is not indispensable that the contract
between the principal and a third person should be legally
binding on either or both in order that the agent may
escape personal liability thereon. When the agent proves
agency—his right to act as agent for another and the
fact that he did so act in conformity with the intention
of the parties—he has gone as far as he need go in the
ordinary case. Because the principal had no power to
make such a contract, which is a matter of public law in
this case, is no reason for holding the agent liable on the
contract. It is unnecessary to discuss the liability of the
agent under given circumstances independent of the con-
tract. It is enough to say that the court is in no posi-
tion to make a contract for the parties which the writing
and evidence disclose they never intended to make for
themselves.

Ellis v. Stone, 21 N. M. 730.

"Where the difficulty is that, though there is a principal in existence, that principal does not possess the power which has been attempted to be conferred upon the agent, a different question arises. The typical case is that of acts done by corporate officers or agents in behalf of the corporation but which are really ultra vires of the corporation. Where the corporation derives its power from some public act or law with which everybody is presumably familiar, and the agent has done no more than attempt to exercise in a corporate capacity a power supposed to be conferred by the act or law, no personal liability should ensue. He ought not to be held to warrant by implication that which is mere matter of law and as much within the knowledge of one party as the other." 1 Mechem on Agency (2d ed.) § 1386.

In Thilmany v. Iowa Paper Bag Co., 108 Iowa, 357, 79 N. W. 261, 75 Am. St. Rep. 259, 261, the several distinctions concerning when and when not the agent shall be held to have become personally liable are discussed. It is an interesting case, and perhaps a leading one on the subject. It is unnecessary to quote from it at length. In part the court said:

"The action is not, then, based upon any misrepresentation as to his authority, but upon the invalidity of the contract itself as between plaintiff and the bank. There was no actionable deceit. for the plaintiff is presumed to know as much about the powers of national banks as the defendant. There is, as we have said, no implied warranty * * * that his principal has authority to make the contract. As a rule, that is a question of law, of which each party has equal knowledge. In the case against the bank we held that national banks have no authority to enter such contract, and, as the plaintiff has no right of action against the bank upon a contract of guaranty such as the one in suit, no recovery should be permitted against the agent; for this would hold every agent to a warranty of legality of his principal's contracts. As we have seen, this is not the obligation of the agent. The second reason sometimes given for the general rule of liability of the agent does not appear to us to be sound. By the application of this principle a new contract is made for the parties. An engagement is created which the parties did not intend to assume, and the decided weight of authority is against such rule." (citing cases.)

The second reason for the rule, to which the court in the last-cited case alludes, is that the law assumes that the contract was intended to bind some one, and, if the principal is not bound, the contract must be that of the agent, which is the argument of appellants as we under-

stand it, and which is very well answered by the court in the case last mentioned.

[6] The last question called to our notice is that Stone treated the writing as his own personal obligation by act and conduct, and therefore it should be held to bind him personally. It is claimed that both the parties to this contract, Stone and Shriver, construed the writing as the personal obligation of Stone, and that their actions all denote that view of it, and therefore Stone must be held. In Fraser v. Bank, 18 N. M. 340, 357, 137 Pac. 592, it was held that the court would not place a different construction upon the contract than that given it by the parties, after rights had accrued thereunder and when such a construction would plainly be at variance with the understanding of the parties to it. See, also, 5 Elliott on Contracts, § 3941. The rule is not applicable to this case. The parties to this writing were never in harmony as to its construction. Neither treated it alike, so far as the evidence indicates the fact. There is evidence tending to show that appellant Shriver acknowledged that the writing was binding on the bank, and not on Stone. The conduct of Stone throughout the life of the contract did not exhibit an acquiescence of personal liability. The trial court expressly negatives the idea that the parties adopted any uniform construction of the contract by saying. in effect, that neither party treated the contract in the same way.

[7] Appellants contend that the court erred in declining to decide the case upon the pleadings and proof. The point made by appellant is that the court in its findings referred to the decision of another trial judge on a demurrer filed in the case, and declared that he felt bound by that decision, which was to the effect that the writing, standing alone, was not the prima facia personal obligation of Stone. We see no cause for complaint on appellant's part. The court determined all the issues between the parties as made by the pleadings and proof, and there is no foundation upon which to base the claim they now make.

In conclusion it might be said that most of the questions decided by the court in this opinion might well be disposed of on technical grounds of practice, but we have preferred to treat them on their merits.

No error appearing in the record, the judgment of the trial court will be affirmed; and it is so ordered.

ROBERTS, C. J., and PARKER, J., concur.

## ON MOTION FOR REHEARING.

HANNA, J.—Appellants, in their motion for a rehearing, attack the soundness of the court's opinion in this case, in three distinct respects. The first point made is that the answer of appellee fails to state facts sufficient to constitute a defense, and the argument thereon seems to be based upon the proposition that if Stone is to be absolved of all personal liability in the premises through alleged agency existing between him and the Citizens' National Bank of Portales it was necessary that agency should be properly alleged, and the liability of the principal disclosed. In the opinion in this case we observed that the question of the bank's liability was not involved in this case, because we took the view that the appellee denied personal liability under the guaranty on the part of testator, J. P. Stone, and that, together with the fact that the bank was not a party to this suit, made the question of the bank's liability entirely immaterial to this case. In paragraph 2 of the complaint it was alleged, among other things, that Stone executed the letter of guaranty, and "in said letter guaranteed that he, the said Stone, would be personally liable and responsible to the said Shriver for said proposed loans and liable for the due payment thereof. * * *" The answer of appellee alleged that in the execution of said guaranty Stone was acting solely for the bank, or rather as its president, and "denies that in said letter the said James P. Stone guaranteed that he would be personally liable and responsible to the said Shriver for said proposed loan, and denies that he guaranteed that he would be liable for the due payment thereof, according to the effect and tenor of said promissory notes, or in any manner."

It will thus be seen that, while appellee attempted to evade liability on the ground that an agency existed between J. P. Stone and the bank, she also specifically denied any personal liability on her part as administratrix under the letter of guaranty, not essentially because Stone was acting as an agent of the bank, but because the writing did not bind Stone. The answer, therefore, cannot be said to be insufficient as stating a defense. It denied what was alleged in the complaint, and cast upon the appellants the burden of proving that the letter of guaranty constituted a personal contract on the part of James P. Stone.

The second point made by appellants is that there is no evidence to show that Stone intended to bind the Citizens' National Bank of Portales by the letter of guaranty. We have held that the letter of guaranty is ambiguous as to who was intended to be bound thereby. While we made reference to the fact stated by appellant that perhaps the writing was intended to bind the bank, having been executed by one of its officers, we expressly said that we did not so find, but that the writing was of such a character that resort must be had to proof aliunde the writing to determine the fact. It is entirely immaterial that there is no proof sufficient to show that the bank was intended to be bound by the instrument, for the finding of the trial court was that the writing did not bind J. P. Stone personally, and the bank is not a party to this suit.

The third and last proposition argued by appellants is that the court did not consider the seventh and eighth assignments of error made by them, which are decisive of the case. The seventh assignment of error is to the general effect that the court erred in holding "that the extrinsic evidence in said cause did not warrant the court in changing the former ruling of said district court upon defendant's demurrer, because the evidence in said cause clearly shows" that the parties interpreted the writing as the contract of Stone personally, and that the writing was intended to bind Stone personally. The eighth assignment is to the general effect that the court should have rendered judgment for appellants because the word "president" was merely descriptive of the person of Stone,

and because there was no evidence that Stone intended to bind the bank.

We have held that the evidence warranted the finding of the court to the effect that the writing did not bind Stone personally, and have also considered the point with reference to the interpretation of the contract by the parties. We also discussed the effect of the use of descriptive words to signatures in contracts. It should be remarked at this point, we believe, that appellants seemingly lay great stress on that part of the trial court's opinion in which it is stated that the evidence "squints" both ways as to the personal liability of Stone on the letter of guaranty. The appellants relied on the writing, which was ambiguous, to hold Stone personally liable thereon. The burden of proof was upon them. If the evidence was evenly balanced, as the trial court said it was, necessarily the appellants did not prove their contention that Stone was personally liable on the letter by a preponderance of the proof. However, the court found that Stone was not personally liable on the instrument, and the record contains no exception thereto on the part of appellants specifically pointing out any error therein. Appellants devote much of their brief to the conduct of T. E. Mears, an attorney, who, it is said, was attorney for one of the appellants prior to the institution of this suit, and who subsequently, while representing the appellee herein, testified in this suit as to certain matters communicated to him while in the employ of the said appellants. We are asked, in effect, to completely disregard this testimony of Mears, in which event it is argued that there is absolutely no evidence to sustain the finding of the trial court that Stone was not personally liable on the letter of guaranty. The record, as we view it, is not entirely clear that Mears was the attorney for Shriver at the time Shriver is supposed to have made a statement testified to by Mears; but, regardless of this, even though we were to refuse to consider the testimony of Mears on this proposition, the appellants thereby would not have sustained the burden of proof by a preponderance of the evidence that Stone was personally liable on the letter of guaranty. In passing,

it should be remarked that no exceptions properly pointing out any alleged vice were taken to the findings of the trial court, and no proposed findings submitted to the court.

The motion for rehearing will therefore be denied, and it is so ordered.

ROBERTS, C. J., and PARKER, J., concur.