Laurence F. BECK, Appellant,

v.

HAINES TERMINAL AND HIGHWAY COMPANY, INC., an Alaska corporation doing business as White Pass Alaska, Appellee.

No. S–4899.

Supreme Court of Alaska.

Dec. 31, 1992.

Jeffrey W. Bush, Birch, Horton, Bittner & Cherot, Juneau, for appellant.

William G. Ruddy, Ruddy, Bradley & Kolkhorst, Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This dispute arises from a guaranty agreement between Haines Terminal & Highway Co. (White Pass) and Laurence F. Beck. Beck guaranteed the debts of Chilkoot Lumber Co., Inc., for whom he worked as general manager. Beck appeals the superior court's grant of summary judgment in favor of White Pass. We affirm.

## I. FACTS AND PROCEEDINGS

Chilkoot Lumber started operating in Haines, Alaska during the spring of 1987. White Pass was a local fuel distributor. As Chilkoot Lumber's general manager, Beck requested an account be established with White Pass for petroleum products delivery. White Pass provided a two page application, which Beck's bookkeeper completed. Beck then signed the forms, using his signature with the caption, "General Manager." The first page was a credit application for Chilkoot Lumber. On this page, Beck requested a $10,000 "maximum monthly credit limit" for Chilkoot Lumber.

The second page was a "Joint Personal Guaranty."[1] Beck did not read the guaranty, and alleged he would not have signed it had he done so. Beck alleged that White Pass neither requested nor relied upon his signature. He also alleged he signed the form in his capacity as general manager, not as an individual.

After White Pass approved the credit application, it sold fuel and petroleum products to Chilkoot Lumber. During some months, credit sales exceeded the $10,000 limit. . Eventually, Chilkoot Lumber ran into financial difficulties and stopped making payments.

White Pass sued Chilkoot Lumber and Beck as guarantor for $139,162.26. The superior court awarded summary judgment to White Pass for that amount on November 13, 1991. Beck appeals the grant of summary judgment.[2]

## II. STANDARD OF REVIEW

■ In reviewing a grant of summary judgment, we must determine whether there exists a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Thorstenson v. ARCO Alaska, Inc.*, 780 P.2d 371, 374 (Alaska 1989). If the moving party establishes *prima facie* that it is entitled to judgment as a matter of law, the party opposing summary judgment must demonstrate that there exists a genuine issue of material fact to be litigated. *Id.* We view the facts in the way most favorable to the appellant. *Loyal Order of the Moose v. International Fidelity Ins. Co.*, 797 P.2d 622, 628 (Alaska 1990).

## III. DISCUSSION

### A. Reliance

■ Beck argues his personal guaranty was unenforceable because White Pass nei-

---

1. The text of the guaranty reads:
   WE Laurence F. Beck AND _____ RESIDING AT Haines, Alaska, FOR AND IN CONSIDERATION OF YOUR EXTENDING AT OUR REQUEST CREDIT TO Chilkoot Lbr., Co., Inc. (HEREINAFTER REFERRED TO AS "THE COMPANY"), HEREBY PERSONALLY GUARANTEE TO WHITE PASS THE PAYMENT AT SKAGWAY, ALASKA OF ANY OBLIGATION OF THE COMPANY AND WE HEREBY AGREE TO BIND OURSELVES TO PAY WHITE PASS ON DEMAND ANY SUM WHICH MAY BECOME DUE TO WHITE PASS BY THE COMPANY WHENEVER THE COMPANY SHALL FAIL TO PAY THE SAME. IT IS UNDERSTOOD THA [sic] THIS GUARANTEE SHALL BE CONTINUING AND IRREVOCABLE. WE DO HEREBY WAIVE NOTICE OF DEFAULT NON PAYMENT AND NOTICE THEREOF AND CONSENT TO ANY MODIFICATION OR RENEWAL OF THE CREDIT AGREEMENT HEREBY GUARANTEED.
   SIGNATURE L.F. Beck

2. Chilkoot Lumber has not appealed the summary judgment decision against it.

ther requested nor relied on it in extending Chilkoot Lumber credit. As the superior court correctly noted, "no Alaska cases ... hold, or even mention, reliance as a requirement for the validity of personal guarantees." We decline to adopt a reliance requirement where the guaranty and the underlying extension of credit were contemporaneous. Requiring a creditor to prove reliance, in addition to the existence of a valid contract, is unduly burdensome and serves no valid purpose.

### B. Corporate Designation after Signature

■ Beck argues that summary judgment was inappropriate because the designation "General Manager" after his signature made the guaranty agreement ambiguous. He further argues that he intended to sign the guaranty in his corporate capacity and should not be held individually liable. We disagree.

■ We have not decided previously whether a signature followed by a corporate designation on a personal guaranty creates an ambiguity, necessitating consideration of extrinsic evidence. In other jurisdictions, authority is split. *See* Gary D. Spivey, Annotation, *Admissibility of Parol Evidence to Show Whether Guaranty of Corporation's Obligation Was Signed in Officer's Representative or Individual Capacity,* 70 A.L.R.3d 1276 (1976). We adopt the line of reasoning that holds:

> [w]here a writing in the nature of a contract is signed by a person, and contains apt words to bind him personally, the fact that to such signature is added such words as 'trustee,' 'agent,' 'treasurer,' 'president,' and the like does not change the character of the person so signing, but is considered as merely descriptive of him.... The mere fact that a person sustains an agency relation to another does not prevent him from becoming personally liable on a contract

with a third person, and, if it appears from the contract that he pledged his own credit or bound himself personally, the addition of such words as 'president' and the like will be considered as mere *descriptio personae.*

*Ricker v. B–W Acceptance Corp.,* 349 F.2d 892, 894 (10th Cir.1965) (quoting *Ellis v. Stone,* 21 N.M. 730, 158 P. 480, 483 (1916)); *see also* 2 Jaeger, *Williston on Contracts* § 299 at 393–94.

The rationale for this approach is sound. "Under normal circumstances, a written collateral undertaking given to secure a corporate debt will be rendered meaningless if the primary debtor is found to be the sole party liable thereunder." *Dann v. Team Bank,* 788 S.W.2d 182, 184 (Tex.App. 1990).

The agreement states that Beck "personally guarantee[d] ... the payment ... of any obligation of [Chilkoot Lumber] ... whenever [Chilkoot Lumber] shall fail to pay." Unless Beck is individually liable, the guaranty is illusory. Therefore, we hold that the designation "General Manager" after Beck's signature was merely descriptive language. Beck's subjective intent in signing the guaranty is irrelevant.

### C. Liability Limitation

■ The final issue is whether the $10,-000 "maximum monthly credit limit" on the credit application limits Beck's liability under the guaranty.[3] We hold that it does not.

> Where the contract between the guarantee and principal debtor limits the obligation of the former to extend credit to the latter up to a specified amount, such limitation does not modify or condition the contract by which the guarantor agrees to guarantee the payment of all credits extended to the debtor, and the liability of the guarantor is not limited to such amount or discharged by the extension of more credit than the amount so specified.

**3.** Beck also disputes the interpretation of the $10,000 limit. Because we hold the limit does

not apply to the guaranty agreement, we need not decide this issue.

*Missouri Farmers Ass'n, Inc. v. Coleman,* 676 S.W.2d 855, 858 n. 1 (Mo.App.1984) (quoting 38 C.J.S. *Guaranty* § 56 at 1211).

In the guaranty, Beck agreed "to pay White Pass on demand *any sum* which may become due to White Pass by the company whenever the company shall fail to pay the same." (Emphasis added). The guaranty does not mention the credit application's $10,000 monthly limit. Beck waived any right he may have had to limit his liability by consenting to "any modification or renewal of the credit agreement hereby guaranteed."

AFFIRMED.