# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-00620-SCT

*R.K. METALS, LLC AND MARK LOVIL*

*v.*

*E & E CO., INC. d/b/a JLA HOME FABRICS, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/01/2023 |
| TRIAL JUDGE: | HON. JOHN R. WHITE |
| TRIAL COURT ATTORNEYS: | B. WAYNE WILLIAMS |
| | NORMA CARR RUFF |
| | TAYLOR HAMILTON WEBB |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | NORMA CARR RUFF |
| | B. WAYNE WILLIAMS |
| ATTORNEY FOR APPELLEE: | TAYLOR HAMILTON WEBB |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 03/06/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**BRANNING, JUSTICE, FOR THE COURT:**

¶1.     In this case of first impression, we consider whether the trial court erred by holding that a company president's signature in his representative capacity on a commercial lease binds him to personally guarantee the terms of the lease as written and, therefore, binds him to the lease's arbitration clause.  After careful consideration, we affirm the trial court's decision.

# FACTS AND PROCEDURAL HISTORY

¶2.     Mark Lovil was the manager of R.K. Metals, LLC (R.K. Metals), which leased a commercial building from E&E, Co. Inc. (E&E), in 2015. Lovil signed the 2015 lease in his capacity as manager of R.K. Metals and not in his individual capacity. The 2015 lease was prepared by E&E and contained neither a personal guaranty clause nor an arbitration clause. During the 2015 lease term, R.K. Metals became delinquent in rent payments, which prompted E&E to require R.K. Metals to sign a new lease agreement at the expiration of the 2015 lease term.[1]

¶3.     In 2018, E&E prepared a new lease, which also included an arbitration clause and the following personal guaranty clause:

> **PERSONAL GUARANTEE BY LESSEE.** This Lease Agreement shall
> be personally guaranteed by Mark Lovil, referred to as the "Guarantor(s)",
> and shall unconditionally guarantee the payment of the rent *along with any*
> *other financial duties or obligations*.

R.K. Metals contends that it was not aware of the additional arbitration and guaranty clauses until E&E delivered the final version of the agreement for signature. But at the end of the same page as the guaranty clause, the lease agreement included a signature line for the Lessee, as follows:

> **LESSEE SIGNATURE**
> Signature _____ Date _____
> Mark Lovil, President

---

[1] The 2015 lease agreement contained an option to extend the lease for an additional thirty-six months; however, E&E was unwilling to allow R.K. Metals to exercise this option.

Lovil signed and dated the new lease agreement, which provided for a signature in his representative capacity only.

¶4.    R.K. Metals filed a complaint in the Lee County Circuit Court in May 2020, seeking declaratory relief and asserting breach-of-contract claims against E&E based on the new lease.[2] The circuit court found the lease to be enforceable and ordered the case to arbitration. After E&E sought to join Lovil in his personal capacity as a party to the arbitration, the parties moved for a determination as to Lovil's status as guarantor and whether he could be compelled to participate in arbitration in his individual capacity.

¶5.    Following a hearing on E&E's Motion for Summary Judgment, the circuit court found that Lovil was the personal guarantor of the lease and as such, Lovil was a necessary party to arbitration. The court described the "essential" legal question as "whether Mr. Lovil's single signature can bind him in both a representative capacity and as a guarantor to the lease agreement or whether he can be bound as a guarantor only if he signed the application a second time in his individual capacity."

¶6.    R.K. Metals and Lovil now appeal to this Court.

## STANDARD OF REVIEW

¶7.    When a trial court grants or denies summary judgment, this Court applies a *de novo* standard of review. ***Jones v. Alcorn State Univ.***, 337 So. 3d 1062, 1066 (Miss. 2022) (citing ***Copiah Cnty. v. Oliver***, 51 So. 3d 205, 207 (Miss. 2011)).  Additionally, the Court applies a *de novo* standard of review to issues involving the interpretation of contracts. ***Cherokee***

___

[2] R.K. Metals argued, in part, that the lease was void due to a tax sale of the property. That issue is not relevant to this appeal.

3

*Ins. Co. v. Babin*, 37 So. 3d 45, 48 (Miss. 2010) (citing *Warwick v. Gautier Util. Dist.*, 738 So. 2d 212, 215 (Miss. 1999)). Questions of law, including whether a person may be compelled to arbitration are also subject to a *de novo* standard of review. *Carrick v. Turner ex rel. Walley*, 298 So. 3d 1006, 1011 (Miss. 2020) (quoting *Fradella v. Seaberry*, 952 So. 2d 165, 170 (Miss. 2007)); *Olshan Found. Repair Co. of Jackson, LLC v. Moore*, 251 So. 3d 725, 728 (Miss. 2018) (citing *Harrison Cnty. Com. Lot, LLC v. H. Gordon Myrick, Inc.*, 107 So. 3d 943, 949 (Miss. 2013)).

## DISCUSSION

I.      **Whether Lovil is bound as personal guarantor to the commercial lease.**

¶8.    R.K. Metals and Lovil argue that because Lovil signed the lease agreement in his capacity as president of R.K. Metals and not individually by way of a separate signature, he should not be held personally liable, even though his name appears in the personal guaranty section of the lease. "Mississippi follows the general rule that individual liability of corporate officers or directors may not be predicated merely on their connection to the corporation . . . ." *Turner v. Wilson*, 620 So. 2d 545, 548 (Miss. 1993).

¶9.    The manner in which these principles apply to a commercial lease that expressly names the corporate officer or director as personal guarantor, however, is a matter of first impression in Mississippi.[3] Other jurisdictions addressing similar issues have consistently

---

[3] In *Richardson v. Jenkins Builders, Inc.*, 737 So. 2d 1030, 1032 (Miss. Ct. App. 1999), our Court of Appeals declined to find the sole shareholder of a company individually liable when "the contract, on its face, place[d] the burden of performance on a corporation and not on an individual" and "[t]here [was] no arguable basis to conclude that [the plaintiff] either actually believed or was justified in believing that [the sole shareholder] was

4

found that the signature of a representative can sufficiently bind him in his personal capacity when the clear language of the contract evinces the parties' intent for representative to be personally bound. For example, in **84 Lumber Co. v. Smith**, 356 S.W.3d 380 (Tenn. 2011), a commercial credit application "contained language immediately above the signature line stating that the individual signing the contract personally guaranteed amounts owed to the vendor." *Id*. at 381. The guaranty provision stated:

> By signing below I hereby certify that I am the owner, general partner or president of the above business, and I do unconditionally and irrevocably personally guarantee this credit account and payments of any and all amounts due by the above business, and that I have read all of the terms and conditions on the reverse side of this application and understand and agree to the same, and that all of the information contained in this application is true and correct to the best of my knowledge.

*Id.* at 381-82 (capitalization omitted). Below this provision was the signature: "R. Bryan Smith, President." *Id.* at 382 (internal quotation marks omitted). The Tennessee Supreme Court held that the credit application "contained explicit language sufficient to bind the president as an individual guarantor of the contract." *Id.* at 381. While acknowledging the general rule that in "most cases, a representative who signs a contract is not personally bound to the contract[,]" the court stated that a "representative who signs a contract may be personally bound, however, when the clear intent of the contract is to bind the representative." *Id.* at 382. Further, the "intention of the parties is based on the ordinary

---

personally guaranteeing the contract's performance."

5

meaning of the language contained within the four corners of the contract." *Id.* at 383 (citing *Kiser v. Wolfe*, 353 S.W.3d 741, 747 (Tenn. 2011)).[4]

¶10.    Other jurisdictions have reached similar conclusions. "[W]here a writing in the nature of a contract is signed by a person, and contains apt words to bind him personally, the fact that to such signature is added such words as 'trustee,' 'agent,' 'treasurer,' 'president,' and the like does not change the character of the person so signing, but is considered as merely descriptive of him . . . ." *Beck v. Haines Terminal & Highway Co.*, 843 P.2d 1229, 1231 (Alaska 1992) (quoting *Ricker v. B-W Acceptance Corp.*, 349 F.2d 892, 894 (10th Cir. 1965)).[5]  The court noted that "[t]he mere fact that a person sustains an agency relation to another does not prevent him from becoming personally liable on a contract with a third person[.]" *Id.* (quoting *Ricker*, 349 F.2d at 894).

¶11.    Also, in *Builders Kitchen & Supply Co. v. Moyer*, 776 N.W.2d 112, at *3 (Iowa Ct. App. 2009) (internal quotation mark omitted), a company president argued that "because he included the designation of president following his name, he [could not] be personally liable" for a guaranty clause that stated, "I hereby personally guarantee to pay on demand any and

---

[4] But in a subsequent unpublished decision, the Tennessee Court of Appeals declined to find a company officer bound as guarantor when the signature was separated by several pages from the guaranty provision, the guaranty provision was not pronounced or set off from the rest of the text, and the alleged personal obligation was in conflict with other provisions of the lease. *Creekside Partners v. Scott*, No. M2012-00623-COA-R3CV, 2013 WL 139573, at *5 (Tenn. Ct. App. Jan. 10, 2013).

[5] In *Beck*, the guaranty clause read in relevant part: "We Laurence F. Beck . . . hereby personally guarantee to . . . pass the payment . . . and we hereby agree to bind ourselves to pay . . . any sum which may become due . . . whenever the company shall fail to pay the same." *Id.* at 1230 n.1 (capitalization omitted).

all sums due that my/our company shall fail to pay." The court disagreed, holding that when "a contract term imposes personal liability, one is not relieved of this liability simply by including a designation following his or her signature." *Id.*; *see also* ***Onderko v. Advanced Auto Ins., Inc.***, 477 So. 2d 1026, 1027 (Fl. Dist. Ct. App. 1985) (finding a signing officer to be personally liable on a lease that stated: "the person signing this Lease on behalf of such corporation . . . shall be jointly and severally liable for all rent . . . .").

¶12.    Lovil argues that the circuit court "should have considered [his] affidavit to determine his intent in signing the Lease" because the lease "does not unambiguously establish that Lovil agreed to guarantee the rent payments." But a signatory's "subjective intent in signing the guaranty is irrelevant." ***Beck***, 843 P.2d at 1231; *see also* ***Moody v. Schloss & Kahn, Inc.***, 600 So. 2d 1045, 1047 (Ala. Civ. App. 1992) ("a guarantor may not defeat the terms of an agreement by stating that he did not intend to obligate himself as a guarantor"). Rather, the relevant analysis is of the plain language of the contract. This Court has previously held that "[i]n contract construction cases a court's focus is upon the objective fact—the language of the contract." ***Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.***, 857 So. 2d 748, 752 (Miss. 2003) (internal quotation mark omitted) (quoting ***Turner v. Terry***, 799 So. 2d 25, 32 (Miss. 2001)). We have also found that "a contracting party is under a legal obligation to read a contract before signing it," and "a person is charged with knowing the contents of any document he executes." ***S. Healthcare Servs., Inc. v. Lloyd's of London***, 110 So. 3d 735, 746 (Miss. 2013) (internal quotation marks omitted) (quoting ***Terminix Int'l Inc. v.***

***Rice***, 904 So. 2d 1051, 1056 (Miss. 2004)).[6]  This Court will not refuse to enforce a contract's provision simply because a party claims to be unaware of its terms, especially when the terms are expressly stated.  ***Id.*** at 746-47.

¶13.   The persuasive authorities cited above agree that the presence of a company designation, such as "president," does not make the contract ambiguous.  This is because "under normal circumstances, a written collateral undertaking given to secure a corporate debt will be rendered meaningless if the primary debtor is found to be the sole party liable thereunder." ***Beck***, 843 P.2d at 1231 (internal quotation marks omitted) (quoting ***Dann v. Team Bank***, 788 S.W.2d 182, 184 (Tex. Ct. App. 1990)). Therefore, under this rationale, "if it appears from the contract that [the representative] pledged his own credit or bound himself personally, the addition of such words as 'president' and the like will be considered as mere *descripto personae*." ***Beck***, 843 P.2d at 1231 (quoting ***Ricker***, 349 F.2d at 894).

¶14.   Here, the language of the guaranty clause evinces a clear intent for Lovil to be bound as the personal guarantor.  The language unambiguously states that the agreement "shall be personally guaranteed by Mark Lovil, referred to as the 'Gurantor(s)', and shall unconditionally guarantee the payment of the rent along with any other financial duties or obligations."  Lovil's signature was inscribed just below the guaranty provision, which contains clear and unambiguous language.  His corporate designation as "president" does not nullify the guaranty provision, nor does his representative status preclude him from

---

[6] R.K. Metals and Lovil emphasize that E&E added the guaranty provision at the last minute and that R.K. Metals felt compelled to either sign the lease as is or be forced abruptly to vacate the property.

8

concurrently undertaking the personal guaranty. As such, we find that Lovil's signature sufficiently bound him as guarantor in his individual capacity.

II.     **Whether Lovil, in his individual capacity as guarantor, is bound by the commercial lease's arbitration clause.**

¶15.    We also agree with the circuit court's finding that Lovil, as personal guarantor, is a necessary party to the arbitration. First, the personal guaranty clause clearly states that the "Lease Agreement shall be personally guaranteed by Mark Lovil . . ." and that Lovil "shall unconditionally guarantee the payment of rent along with any other financial duties or obligations." The language in this provision binds Lovil for the entire lease agreement as well as any additional duties or obligations under the agreement. One such obligation would be to participate in the agreed-upon arbitration.

¶16.    Second, this Court agrees with the circuit court's conclusion that Lovil is compelled to participate in arbitration under the doctrine of equitable estoppel based on his relationship with R.K. Metals. We have held that "where [a] non-signatory has a close legal relationship, such as, alter ego, parent/subsidiary, or agency relationship, with a signatory to the agreement," the non-signatory party may be required to participate in arbitration. *Sawyer v. Herrin-Gear Chevrolet Co., Inc.*, 26 So. 3d 1026, 1038 (Miss. 2010) (quoting *B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 491-92 (Miss. 2005)). As the president of R.K. Metals, Lovil certainly has a "close legal relationship" to the company.

¶17.    Ultimately, we find that the circuit court's conclusion comports with the "national body of law addressing similar issues." *Covenant Health & Rehabilitation of Picayune, LP v. Est. of Moulds ex rel. Braddock*, 14 So. 3d 695, 697 (Miss. 2009). "[A]rbitration clauses

9

shall not receive especial treatment not otherwise available under basic contract principles."
*Id.* at 699. The lease agreement is certainly a contract. By personally guaranteeing the lease agreement, Lovil became a party to the contract, and as "[a]rbitration agreements and other contract terms should be on equal footing," Lovil is bound by the arbitration clause just as he would be by any other term in the contract. *Id.* (citing *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652, 1656, 134 L. Ed. 2d 902, 909 (1996)). We, therefore, agree with the circuit court's conclusion that Lovil is compelled to participate in arbitration.

## CONCLUSION

¶18. Mark Lovil signed the lease agreement, which specifically named him as personal guarantor. We find that Lovil is bound in his individual capacity as personal guarantor to the lease. Additionally, we find that the circuit court correctly concluded that Lovil is compelled to participate in arbitration under the doctrines of equitable estoppel and agency. The judgment of the circuit court is, therefore, affirmed.

¶19. **AFFIRMED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., MAXWELL, CHAMBERLIN, ISHEE, GRIFFIS AND SULLIVAN, JJ., CONCUR.**