(685 P.2d 316)

No. 55,434

McBRIDE ELECTRIC, INC., *Appellee,* v. PUTT'S TUFF, INC., ROBERT C. RICHEY, MABLE SPOHN and WILLIAM J. McKENNA, *Appellants.*

Opinion filed June 21, 1984.

*Don Matlack*, of Matlack & Foote, of Wichita, for appellants.

*Martin E. Updegraff*, of Vaughn & Updegraff, of Wichita, for appellee.

Before ABBOTT, P.J., MEYER and BRISCOE, JJ.

MEYER, J.: This is an action against individuals as guarantors on a corporate note.

Appellee McBride Electric, Inc. (plaintiff) had provided services for appellant-defendant Putt's Tuff, Inc. As of April 1980, the balance due from Putt's Tuff, Inc. was $15,916.93. Putt's Tuff, Inc. had requested additional services, but plaintiff's president had directed that no further services be rendered unless and until the corporate debt was guaranteed by certain individuals who were officers of Putt's Tuff, Inc.

On May 9, 1980, a promissory note was executed on behalf of Putt's Tuff, Inc., by Robert C. Richey, as president of Putt's Tuff, Inc. Also included in that note, under the heading of "Guarantors" were the signatures of defendants-appellants Robert C. Richey, William J. McKenna and Mable Spohn (defendants).

Putt's Tuff, Inc. defaulted on this loan, and on August 26, 1982, plaintiff brought suit against Putt's Tuff, Inc. and the individual defendants as guarantors on the note. Judgment was taken against defendants on December 27, 1982. They duly perfected this appeal.

Defendants' first issue relates to the scarcity of the record on appeal, and it is contended therein that the record is inadequate to permit meaningful appellate review of the judgment rendered below. Based on this contention, defendants pray that this court grant them a new trial.

At the trial of this matter, it was stipulated by all parties that no transcribed record of the proceedings would be made. Later,

when it became apparent that an appeal would be taken, defendants attempted to reconstruct the record via Supreme Court Rule 3.04 (232 Kan. cvi), which states:

"In the event no official transcript of the evidence or proceedings at a hearing or trial can be made and no other official record is available, a party to an appeal may prepare a statement of the evidence or proceedings from the best available means, including his own recollection, for use instead of a transcript. Within ten (10) days after the filing of the notice of appeal, the statement shall be served on the adverse parties who may serve objections or propose amendments thereto within ten (10) days. Thereupon, the statement with objections or proposed amendments shall be submitted to the judge of the district court for settlement and approval, and as settled and approved shall be included in the record on appeal by the clerk of the district court."

Defendants filed their statement, and plaintiff filed its objections and proposed amendments. Judge Hornung, who had presided at trial but had since left the bench, was called back as a Special Master to resolve the dispute. Judge Hornung could not remember the details of the evidence originally presented by the parties, and so the conflict could not adequately be resolved. Special Master Hornung's Statement of Facts is thus a compilation of those facts agreed to and those still disputed.

Defendants argue that the lack of a certified transcript, coupled with the failure of the parties to reach an agreement on a statement of the evidence, entitles them to a new trial on the ground that the record is inadequate to permit meaningful appellate review of the judgment. This argument has no merit under the circumstances of this case.

Under Kansas law, it is the appellant who is charged with the duty of compiling a record adequate to support his contentions of error. See *Farmers Ins. Exchange v. Schropp,* 222 Kan. 612, Syl. ¶ 8, 567 P.2d 1359 (1977). Furthermore, error at the trial court level is never presumed, but must be made to affirmatively appear. *Gladney v. Sheriff of Leavenworth County,* 3 Kan. App. 2d 568, 598 P.2d 559 (1979). Thus, it is incumbent upon the appellant to include in the record on appeal any matter upon which he intends to base a claim of error. *Frevele v. McAloon,* 222 Kan 295, 299, 564 P.2d 508 (1977).

In the instant case, there is a complete absence of the testimony given by both parties to this action. This lack of a record

came about by stipulation and agreement of the parties that no record be made. Thus, defendants agreed to forego the preparation of a transcribed record of the proceedings. This was defendants' choice, voluntarily made, and they should not now be allowed to predicate a prayer for a new trial upon a set of facts which they helped to create. The granting of a new trial on this ground would obviate the long-standing rules mentioned above, as well as violate the spirit, if not the letter, of the invited error rule. See *Koerner v. Custom Components, Inc.,* 4 Kan. App. 2d 113, Syl. ¶ 1, 603 P.2d 628 (1979).

We take note that this is not a case, such as some we have had, where the court reporter could not prepare an accurate record— such as, for example, where the transcribing reporter is no longer available and the successor reporter could not accurately decipher the trial transcription.

We find strong support, however, for the conclusion we reach herein in the following cases. In *Osborne v. Fakes,* 178 Kan. 373, 376, 286 P.2d 156 (1955), the court held:

"[This court is] committed to the rule that where—as here—an appellant has failed to procure an official transcript or abstract the testimony of record in some accepted manner it will not review any action of the trial court requiring an examination of the evidence. (See *In re Estate of Fitzroy,* 172 Kan. 339, 240 P.2d 163; *Bisagno v. Lane,* 168 Kan. 153, 211 P.2d 85; *Barker v. Chicago R. I. & P. Rly. Co.,* 158 Kan. 549, 148 P.2d 493.)"

*In re Estate of Fitzroy,* 172 Kan. 339, Syl. ¶ 2, 240 P.2d 163 (1952), also contains instructive language:

"Where there is no transcript and the accuracy of appellant's statements of the evidence is disputed by appellee, the supreme court must and will assume that the trial court's findings of fact are correct and that they were supported by the evidence."

More recently, the court in *First Nat'l Bank & Trust Co. v. Lygrisse,* 231 Kan. 595, Syl. ¶ 9, 647 P.2d 1268 (1982), held as follows:

"Where an appellant has failed to procure an official transcript or abstract the testimony of record or reconstruct it in some accepted manner, this court will not review any action of the trial court requiring an examination of the evidence."

Admittedly, the case at bar is not on all fours with any of the

cases cited above. In many of those cases the appellant either neglected to provide the appellate court with an ostensibly available transcript, or did not attempt available means to reconstruct missing evidence. Nor is this a case where the appellant is faced with objective impossibility in his attempts to procure a transcript, as where the record has been lost or destroyed. We note the diligence with which counsel for defendants has sought to reconstruct the record. We cannot escape, though, from the fact that the necessity of reconstructing the record is directly attributable to a stipulation by the parties, including all defendants, that no record be preserved. Thus, while some factual distinctions may be drawn between the cases we cite above and the instant appeal, nevertheless, we feel the long-standing precedent of those cases is dispositive of this case.

Our research of the law from other jurisdictions reveals support for the result we have reached herein. For example, the Supreme Court of Montana, in *Martinez v. Martinez,* 175 Mont. 280, Syl. ¶ 2, 573 P.2d 667 (1978), held:

"Where counsel for both parties agreed to dispense with a court reporter and waive their right to a record of trial when at time of trial court reporter indicated that, due to his work schedule, he could not report case at time set, appellant voluntarily waived his right to a court reporter at trial and could not on appeal object to absence of transcript of proceedings."

And see also *Waitt v. Waitt,* 172 Ind. App. 357, 360 N.E.2d 268 (1977); and *City of Hammond, Lake County v. N. I. D. Corp.,* _____ Ind. App. _____, 435 N.E.2d 42 (1982).

Based on all of the foregoing, we find no merit to defendants' first issue.

Defendants' second issue is based on the contention that the promissory note on its face plainly demonstrates that the individual defendants signed the note only in their capacities as corporate officers, and thus should not have been personally liable.

A copy of the note is presented below.

PROMISSORY NOTE

For value received, Putt's-Tuff, Inc. promises to pay to McBride Electric, Inc., the principal amount of $15,916.93, plus interest from September 7, 1979, at the rate of 18% per annum. The total sum of. $18,256.23 (principal plus $2,339.30 interest) to be paid on July 1, 1980. Signed and acknowledged this  9 ᵃ  day of ~~April,~~ *May* 1980.

PUTT'S-TUFF, INC.

By: _Robert C. Richey_  Pres
    Robert C. Richey

Guarantors:

_Robert C. Richey_
Robert C. Richey

_William J. McKenna_
William J. McKenna

_Mable Spohn_
Mable Spohn

_____
Fred Bayless

A note is a contract. The cardinal rule in the interpretation of contracts is to determine the intent of the parties at the time the contract was entered into, and to give effect to that intent.

*Garvey Center, Inc. v. Food Specialties, Inc.*, 214 Kan. 224, Syl. ¶ 1, 519 P.2d 646 (1974). The court in *Garvey* went on to state two other rules for interpreting written contracts:

"The intent and purpose of a written instrument are not to be determined by considering one isolated sentence or provision thereof but by considering and construing the instrument in its entirety."

"In placing a construction on a written instrument, reasonable rather than unreasonable interpretations are favored by the law. Results which vitiate the purpose or reduce the terms of the contract to an absurdity should be avoided. The meaning of a contract should always be ascertained by a consideration of all the pertinent provisions and never be determined by critical analysis of a single or isolated provision." 214 Kan. 224, Syl. ¶¶ 2, 3.

And see also *Stanfield v. Osborne Industries, Inc.*, 232 Kan. 197, Syl. ¶ 3, 654 P.2d 917 (1982); and *Pottratz v. Firkins*, 4 Kan. App. 2d 469, 471, 609 P.2d 185 (1980).

Examining the note in question, we conclude that the persons who signed below the heading "Guarantors" have personally obligated themselves as sureties on the corporate debt. This reasoning follows from the plain and unambiguous use of the word "guarantors." It is noted that defendant Robert C. Richey signed the note twice: once in a representative capacity, as president of Putt's Tuff, Inc., to obligate the corporation as the principal maker on the note; and once in his personal capacity as a guarantor, along with defendants William J. McKenna and Mable Spohn.

Defendants' argument that their signatures below the heading of "Guarantors" were merely expressions of their representative capacities would reduce the heading of "Guarantors" to an absurdity. If those signatures were merely as representatives of Putt's Tuff, Inc., then the heading "Guarantors" would have been unnecessary, and Robert C. Richey would not have had to sign the note in two places. The only logical and sensible interpretation of the note is that the defendants signed as personal guarantors.

Defendants' argument that the inclusion of their corporate titles behind their signatures prevents their being personally liable is also without merit. To accept defendants' argument would elevate form over substance and allow them to escape by subterfuge a clear expression of personal liability. It would also have the untenable result of making the guarantor of the note the same corporation which was primarily liable thereon. Such a

promise of guaranty would be illusory only; we cannot interpret the guaranty provision in such an illogical manner.

Defendants' final argument under this issue is one related to their first issue: that the lack of an adequate record leaves this court unable to examine whether the evidence purportedly presented by defendants would dictate a contrary result. The infirmity with this argument is that none of the evidence allegedly presented by defendants would have been competent to achieve their desired end.

The parol evidence rule excludes from evidence any oral testimony which would tend to add to, subtract from or alter the terms of a clear and unambiguous written contract. *Robertson v. McCune*, 205 Kan. 696, Syl. ¶ 1, 472 P.2d 215 (1970); and *Temmen v. Kent-Brown Chevrolet Co.*, 217 Kan. 223, Syl. ¶ 3, 535 P.2d 873 (1975).

The court in *Smerchek v. Hamilton*, 4 Kan. App. 2d 346, 347, 606 P.2d 491 (1980), indicated that whether a written contract is ambiguous is a question of law, and stated the following test for ambiguity:

"The language in a contract is ambiguous when the words used to express the meaning and intention of the parties are insufficient in the sense that the contract may be understood to reach two or more possible meanings. *Duffin v. Patrick*, 212 Kan. 772, Syl. ¶ 4, 512 P.2d 442 (1973)."

Applying the above test to the note in the case at bar, we conclude that it is not ambiguous, but is susceptible to only one reasonable interpretation: that defendants personally obligated themselves as guarantors of the corporate debt. Thus, none of the testimony allegedly put on by defendants was admissible to alter or nullify the unambiguous written contract. Therefore, even assuming that the evidence was exactly as defendants allege it was, theirs would still be a lost cause.

There is no merit to defendants' second issue.

Under Kansas law, a guarantor's liability will not be extended by implication beyond the precise terms of his contract. *Kutilek v. Union National Bank of Wichita*, 213 Kan. 407, 411, 516 P.2d 979 (1973). However, in the case at bar, the written contract plainly and unambiguously expressed defendants' intentions to personally obligate themselves as guarantors of the corporate note. This being so, no parol evidence to the contrary was

admissible. Hence, even viewing the alleged evidence of record in the light most favorable to defendants, the judgment for plaintiff was correct and must be affirmed.

Affirmed.