*1089
 
 OPINION
 

 Per Curiam:
 

 FACTS
 

 The Las Vegas Fountain General Partnership (hereinafter “Fountain”) was the owner of commercial property in Las Vegas leased to respondent Shenanigan’s, Inc. and its sole shareholder and President, respondent Gary Brennan, who operated a restaurant and bar on the premises. Respondent Shenanigan’s, Inc. sold its business and equipment and assigned its lease to Shenanigan’s-Las Vegas, Inc. for the sum of $240,500. Seventy-thousand dollars ($70,000) of the total purchase price was to be financed by the seller. Accordingly, Shenanigan’s-Las Vegas, Inc. executed a $70,000 promissory note in favor of Shenanigan’s, Inc. and Brennan. This note was signed by Marsha Miller, as President, and by appellant David Threlkel, as Secretary/ Treasurer of Shenanigan’s-Las Vegas, Inc. Threlkel’s signature appears just prior to the handwritten notation of his corporate capacity, and his name and corporate capacity are also typewritten on the note below his signature. The last sentence of the note, just prior to the signatures of Miller and Threlkel, provides as follows: “The undersigned do hereby personally guarantee the payment of this note.”
 

 Shenanigan’s-Las Vegas, Inc. ultimately defaulted on its lease payments as well as its payments under the note, and thereafter filed a petition in bankruptcy. As a result, Fountain filed a complaint against Shenanigan’s, Inc. and Brennan for over $30,000 in delinquent lease payments and for failure to surrender the premises. Shenanigan’s, Inc. and Brennan filed a third-party complaint against Threlkel and Miller, alleging that Threlkel and Miller were personally liable on the promissory note. Threlkel and Miller’s answer to the third-party complaint admitted existence of the note, but denied personal liability thereon.
 

 Fountain’s claims against respondents were ultimately settled
 
 *1090
 
 and Shenanigan’s, Inc. and Brennan proceeded against Threlkel and Miller on the issue of their liability on the note.
 
 [1]
 
 Although the bench trial was not recorded, the lower court’s “Decision” indicates that Threlkel was allowed to offer his own parol testimony stating that the parties did not intend for him to be personally obligated on the note. The trial court ultimately found this testimony unconvincing and insufficient to overcome what the court determined was the clear intent of the note. Judgment in favor of Shenanigan’s, Inc. and Brennan in the amount of $70,000 plus interest was accordingly entered on August 4, 1993. Only Threlkel now appeals from this decision and judgment.
 

 DISCUSSION
 

 Threlkel contends that under Nevada’s enactment of the UCC, as well as cases interpreting the Uniform Act, if a signer both identifies the principal on whose behalf he is signing and discloses the representative capacity in which he is signing, his or her signature does not create personal liability in the signer.
 
 [2]
 
 Ergo, because the subject promissory note identified the principal and revealed the corporate capacity in which he signed, Threlkel is not liable on the note.
 

 Threlkel’s characterization of the statutory rule is correct.
 
 See, e.g.,
 
 NRS 104.3402(2)(a); Bradley v. Romeo, 102 Nev. 103,
 
 *1091
 
 106, 716 P.2d 227, 229 (1986) (“Because the note neither names [the principal] nor indicates that Romeo signed in a representative capacity, he is personally obligated as a matter of law.”). However, this rule does not apply when representatives sign instruments which state that the signers “personally guarantee . . . payment” thereunder, as the statute simply does not contemplate or provide for such an intervening factor.
 

 McBride Elec., Inc. v. Putt’s Tuff, Inc., 685 P.2d 316, 320-21 (Kan. Ct. App. 1984), involved a promissory note wherein, following the signature obligating the principal, a group of individuals separately signed the note as guarantors. The Kansas court rejected the guarantors’ attempt to avoid liability under the guarantee, stating:
 

 Defendants’ argument that the inclusion of their corporate titles behind their signatures prevents their being personally liable is also without merit. To accept defendants’ argument would elevate form over substance and allow them to escape by subterfuge a clear expression of personal liability. It would also have the untenable result of making the guarantor of the note the same corporation which was primarily liable thereon. Such a promise of guaranty would be illusory only; we cannot interpret the guaranty provision in such an illogical manner.
 

 Likewise, Threlkel is essentially arguing that the corporation principally liable on the note was also the “undersigned” for purposes of the sentence reading that the “undersigned . . . personally guarantee the payment of this note[,]” an untenable proposition.
 

 Further support for our position is found in Consolidated Beef Indus. Inc. v. Schuyler, 716 P.2d 544, 549 (Kan. 1986), where the court ruled:
 

 Defendant Schuyler argues that he is not personally liable because he signed the personal guaranty agreement using the name of “James C. Schuyler, President.” It is his position that because he signed the guaranty agreement as “President,” he cannot be held personally and individually liable for the corporate debt. We find no merit to this contention. The identical issue was before the United States Court of Appeals for the Tenth Circuit in
 
 Ricker
 
 v.
 
 B-W Acceptance Corporation,
 
 349 F.2d 892 (10th Cir. 1965). . . . The
 
 Ricker
 
 court ruled that the company president’s position that he did not intend to obligate himself personally raised no material issue of fact, because the written guaranty agreement was not ambiguous. The court held that to construe the written
 
 *1092
 
 guaranty as binding only the corporation and not Ricker, individually, would contradict and vary the language of the written agreement itself.
 

 The same holding is required under the facts in this case. In the guaranty and indemnity agreement, Schuyler, as guarantor, unconditionally guaranteed to the obligees to pay all sums presently and hereafter owed by the obligor to the obligees.
 

 In Appliance & Heating Supply Inc. v. Telaroli, 682 P.2d 867 (Utah 1984), the Utah Supreme Court was faced with a credit agreement signed by the corporate signer as “President” but including language that the “undersigned, being an officer, shareholder . . . assumes
 
 personal
 
 responsibility for the payment of said corporation’s account, and guarantees in full that said account will be promptly paid.”
 
 Id.
 
 at 868. The court held that: “Telaroli thereafter signed the document, followed by the word ‘president,’ which he claimed, in refusing to make payment, absolved him from personal liability. Such contention flies in the teeth of the language of the . . . agreement above. There is no ambiguity in such language.”
 
 Id.
 

 The
 
 Telaroli
 
 court also relied on an earlier Utah decision, Boise Cascade Corp. v. Stonewood Development Corp., 655 P.2d 668 (Utah 1982). In that case, Ronald Bennett, who had signed a guarantee agreement as “vice-president” of the principal debtor corporation, claimed he was not personally liable thereon. The
 
 Boise Cascade
 
 court ruled that:
 

 The terms of the guarantee are clear and unambiguous, and need no parol evidence to clarify. . . . The “V- Pres.” following appellant’s signature on the agreement is a matter of description (descriptio personae), not of capacity to bind a different principal obligor; otherwise the liability would result in an absurdity, i.e., that the principal obligor also was the guarantor of his own obligation.
 

 Id.
 
 at 669.
 

 Other courts have also relied upon the concept of “descriptio personae” (“a term descriptive of the person rather than the relationship in which he signs the agreement”) when ruling in this area.
 
 See
 
 Sebastian Int’l, Inc. v. Peck, 240 Cal. Rptr. 911, 913 (Ct. App. 1987),
 
 and cases cited therein.
 

 Threlkel attempts to distinguish these cases on the basis that the note he signed contained only a single sentence, rather than an entirely separate paragraph, or separately signed agreement, upon which his personal liability depends. Threlkel also contends that his single signature could not have bound both himself personally and the corporation as principal.
 

 
 *1093
 
 It is true that the promissory note at issue was not particularly well drafted, and would have avoided ambiguity by providing separate signature lines for the principal and the guarantor. However, Threlkel has failed to cite any authority for the proposition that a single signature may not suffice for binding both the principal and the guarantor. More importantly, to the degree the above-cited cases reflect less ambiguity in the contested instruments, it must be remembered that, unlike most of those cases, this is not an appeal from a directed verdict or order of summary judgment, but from a decision following an evidentiary hearing. Ambiguity in the instrument requires an evidentiary determination that may or may not result in personal liability on the part of the alleged guarantor.
 
 See, e.g.,
 
 Addison State Bank v. National Maintenance Management, Inc., 529 N.E.2d 30 (Ill. App. Ct. 1988) (rejecting order of summary judgment and remanding for trial where signer’s notation of official capacity made the note ambiguous as to whether President was intended to be personally obligated thereon).
 

 Here, the issue of Threlkel’s personal liability on the note was determined at trial. The district court, having heard and considered the evidence, including parol testimony concerning the intent of the parties, found Threlkel’s testimony and evidence less credible than that of the respondents. There is no basis in the record or in law for this court to overturn this factual finding.
 

 Threlkel’s remaining contentions must likewise be rejected. Threlkel argues, for example, that all of the documentation surrounding the transaction entered into between the parties must be considered together. However, the facts surrounding the transaction to which the promissory note was an incident do not appear to be in dispute. Nothing in the other documents detracts from the conclusion that the language “the undersigned do hereby personally guarantee the payment of this note” means what it says.
 

 Threlkel also contends that where a contract contains conflicting handwritten and printed provisions, the handwritten provisions prevail. However, as the cases cited above demonstrate, the handwritten statement of official capacity does not necessarily constitute a conflicting contract provision (such as “in their official capacity only” might have), but may merely be considered descriptive in nature.
 

 Finally, Threlkel insists that, assuming personal liability on the note, his liability as a guarantor or surety of the principal was discharged by the respondents’ impairment of the collateral securing the note. Specifically, Threlkel contends that the
 
 *1094
 
 respondents impaired the collateral by failing to perfect their security interest therein and that this failure is shown by various filings in the Shenanigan’s-Las Vegas, Inc. bankruptcy proceeding. However, there is nothing in the record before us to support Threlkel’s reliance on the impairment of collateral defense or to corroborate his assertions that the respondents failed to perfect their interest in the collateral securing the loan. Assertedly, documentation supporting this contention appears in the Shenanigan’s-Las Vegas, Inc. bankruptcy court filings. However, no such documentation has been provided to this court.
 

 “This court on appeal must confine its review to the facts shown in the record. . . . [T]here is no way we can review the contention of [an] appellant [which is not demonstrated in the record].” Lee v. Sheriff of Clark County, 85 Nev. 379, 380, 455 P.2d 623, 624 (1969). It does not appear that Threlkel presented evidence regarding this defense below, as it warranted no mention in the district court’s decision. This apparent failure to present evidence on this issue in the trial court may not now be used as a basis for relief on appeal.
 
 See, e.g., Bradley,
 
 102 Nev. at 106-07, 716 P.2d at 229:
 

 Regarding Romeo’s claim that the note [on which he had been held personally obligated] may have been discharged by impairment of collateral... or partial payment, it should be noted that these questions were in issue when the matter was tried below. Since Romeo failed to present any evidence to support these defenses, we are not inclined to order a new trial to give Romeo a second chance to prove his case.
 

 CONCLUSION
 

 For the reasons explained above, the judgment of the district court is affirmed.
 

 [1]
 

 According to Threlkel’s opening brief, the respondents also sought to recover payment on the note from Shenanigan’s-Las Vegas, Inc. by filing a claim in the bankruptcy action, but this claim was allegedly rejected as unperfected. These assertions are not corroborated by our record.
 

 [2]
 

 Threlkel cites the 1991 version of NRS 104.3403 for this proposition. Nevada has recently adopted a revised version of article 3 of the Uniform Commercial Code, under which NRS 104.3402(2) (which does not materially change the principle relevant to Threlkel’s assertions) is the pertinent section. NRS 104.3402(2) reads as follows:
 

 2. If a representative signs his own name to an instrument and the signature is an authorized signature of the represented person, the following rules apply:
 

 (a) If the form of the signature shows unambiguously that the signature is made on behalf of the represented person who is identified in the instrument, the representative is not liable on the instrument.
 

 (b) Except as otherwise provided in subsection 3, if the form of the signature does not show unambiguously that the signature is made in a representative capacity or the represented person is not identified in the instrument, the representative is liable on the instrument to a holder in due course that took the instrument without notice that the representative was not intended to be liable on the instrument. With respect to any other person, the representative is liable on the instrument unless the representative proves that the original parties did not intend the representative to be liable on the instrument.