(78 P.3d 480)
No. 90,310

ROBERT ZUKEL and DARLENE ZUKEL, *Appellants*, v. GREAT WEST MANAGERS, LLC, *Defendant*, and JERRY AVERY, *Appellee*.

Opinion filed October 24, 2003.

*Frank L. Austenfeld*, of Overland Park, for appellants.

*Bruce F. Landeck*, of Overland Park, for appellee.

Before PIERRON, P.J., MALONE and GREENE, JJ.

GREENE, J.: Robert and Darlene Zukel brought this action against both a limited liability company, Great West Managers, LLC (GWM) and its managing member Jerry Avery to enforce a contract to purchase the Zukels' business. After default judgment was taken against GWM, the district court conducted a bench trial and held that Avery was not liable because he executed the purchase contract solely in his representative capacity for GWM and that the statute of frauds, K.S.A. 33-106, barred enforcement. We reverse the district court and find that, based on the particular facts of this case, Avery should be held individually liable.

*Factual and Procedural Overview*

After negotiations among the parties, Robert and Darlene Zukel, together with their corporation, Mid-America Ham Sales, Inc., entered into a contract on April 25, 1998, to sell their store "Heavenly Ham" in Overland Park to GWM, a limited liability company formed by Avery and Leslie Snell. The purchase contract required an early cash payment, followed by regular scheduled payments over 5 years by GWM to the Zukels.

The purchase contract contained the following provision: "14. The members of [GWM], hereby personally guarantee the fulfillment of this agreement to purchase the business." An addendum to the purchase contract provided: "15. Members as indicated in paragraph 14 above, as of the closing date, shall be Les Snell and Jerry Avery." Both the contract and the addendum were executed on behalf of sellers by Robert J. Zukel, as president of Mid-America Ham Sales, Inc., and Robert J. Zukel and Darlene M. Zukel, shareholders and "individuals"; both instruments were executed on behalf of buyer by Jerry Avery, and *below* his signature was stated: "Great West Managers, llc, By Jerry Avery, Managing Member."

After 3 years, GWM defaulted under its obligations pursuant to the purchase agreement, and the Zukels brought this action against GWM, Avery, and Snell for breach of contract. Snell was never

served, and default judgment was entered against GWM. Avery denied individual liability under the purchase contract, asserting affirmative defenses including the statute of frauds. After denying the Zukels' motion for summary judgment against Avery, the district court conducted a bench trial in the matter.

The district court announced its findings of fact and conclusions of law from the bench and incorporated them into its journal entry of judgment. In these findings and conclusions, the court analyzed the case under the statute of frauds and then addressed the "element of intent." The findings and conclusions included the following:

"The first question the Court must analyze is whether there is (1), a writing that (2), is signed by the party to be charged, Jerry Avery, promising to pay the debt of [GWM] to Zukel. The Court does not have before it any writing signed by Jerry Avery in his individual capacity promising to pay the debt of [GWM] to Zukel.

. . . .

"The Court finds that (1), there is in fact a writing . . . and (2), it is signed by Jerry Avery as managing member of [GWM]. The issue then arises as to whether or not Jerry Avery as managing member of [GWM] has authority. In other words, does [GWM] have authority to bind its members and is that authority in writing.

. . . .

"The testimony of Jerry Avery is that there is no such authorization given to the limited liability company to bind its members. The Court finds it has no evidence in the record to support the fourth element of K.S.A. 33-106, that being lawful authority in writing. There is no evidence in the record to support such a finding.

"Therefore, the Plaintiffs have not met their burden of proof or burden of producing evidence on this element. The Court is now going to address the element of intent.

. . . .

"It is generally held that where it is uncertain on the face of an instrument whether such instrument was intended to bind a person in his individual or in his representative capacity, parol evidence is admissible to explain the latent ambiguity and to aid in the interpretation of the instrument.

"On that basis that the Court has allowed the parol evidence. The Court was hopeful that the testimony would clarify what was meant by the parties.

"The Court finds that intent cannot be clearly ascertained. The Plaintiffs have the burden of proof. They have not met their burden of proof. Secondly, this matter is for lack of a better term trumped by the statute of frauds. It says re-

gardless of what you agree to orally, your agreement has to be in writing and signed by the party to be charged. I do not find those two elements present."

*Standard of Review*

On appeal, a written instrument or contract may be construed and its legal effect determined by the appellate court regardless of the construction made by the trial court. *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 486, 15 P.3d 338 (2000). Whether a written instrument is ambiguous is also a matter of law subject to de novo review. *Investcorp, L.P. v. Simpson Investment Co., L.C.*, 267 Kan. 840, 847, 983 P.2d 265 (1999). To the extent that this appeal requires the construction and application of the statute of frauds, our review is unlimited. See *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003). To the extent that this appeal may turn on disputed facts, our function is to determine whether the district court's findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 747, 27 P.3d 1 (2001).

*The District Court Erred in Concluding that the Purchase Agreement was Ambiguous*

If the language of a written instrument is clear and can be carried out as written, there is no room for rules of construction. *KPERS v. Russell*, 269 Kan. 228, 236, 5 P.3d 525 (2000). Where contract terms are plain and unambiguous, the intention of the parties and the meaning of the contract are determined from the contract itself. *Gray v. Manhattan Med. Center, Inc.*, 28 Kan. App. 2d 572, 580, 18 P.3d 291 (2001).

The district court concluded that an ambiguity was created by the apparent inconsistency between the language of the contract and the form of execution. We disagree. *First*, we observe that the language of paragraph 14 of the contract is clear and not subject to alternative interpretation: "The members of [GWM] hereby personally guarantee the fulfillment of this agreement . . . ." Unless the language of a contract may be understood to reach two or more possible meanings, it is unambiguous. See *Duffin v. Patrick*, 212 Kan. 772, Syl. ¶ 4, 512 P.2d 442 (1973). *Second*, we observe that

paragraph 14 employs the term "hereby," thus clearly demonstrating that the parties contemplated no independent instrument to serve as the guarantee. Use of the term "hereby" in an instrument evidences an intent to effect the language "by means of this document." *Elliott v. Whitney*, 215 Kan. 256, 261, 524 P.2d 699 (1974). *Third*, we observe that the addendum demonstrates a further intent to give vitality to the personal guarantee by referencing paragraph 14 and by identifying the "members" by name in a clear and unambiguous fashion.

From this analysis, the instrument is not ambiguous unless and until we examine the somewhat equivocal execution by Avery. It is important, however, that we analyze the execution as a critical part of the whole contract and not in a vacuum. The meaning of a written instrument should always be ascertained by a consideration of all pertinent provisions and not by the critical analysis of a single or isolated provision. *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, Syl. ¶ 3, 961 P.2d 1213 (1998).

We concede that the Avery signature is curious in that it does not have either the clear characteristics of an individual execution nor those of a representative execution. The signature block on the buyer's side begins with the unrestricted naked signature of "Jerry Avery," but it is not followed by the identifier "an individual"; the signature is *followed* by the typewritten text: "Great West Managers, llc, By Jerry Avery, Managing Member," but it has no further signature line. The district court cited other instruments involved in the overall transaction for the conclusion that "Avery has signed documents in his individual capacity and representative capacity and knows the difference." Indeed, the other instruments cited by the district court reflect both individual and representative executions, but *none* of them have the curious form of execution on the purchase contract and addendum. Instead, representative signatures on the other instruments have traditional typewritten text clearly identifying the corporate entity *above* the signature. We note that corporate execution is not recommended as found on the subject contract. The proper mode of execution by a corporation is to state the name of the corporation, followed by the names of the officers with capacity preceded by the word "per" or "by," and

followed by the title of the officers. 7 Fletcher Cyc. Corp. §§ 3032, 3034 (1997); see also 2A Fletcher Corp. Forms §§ 2154, 2158, and 2160 (4th ed. 1998) (suggesting this mode in order to preclude personal liability of officer). Indeed, this is precisely the mode of execution utilized by Avery in a related instrument. Given these irregularities, we conclude that the form of execution by Avery is not inconsistent with an intent to execute as an individual.

Notwithstanding the somewhat equivocal execution, but considering all of the provisions of the contract in a manner to provide consistency and harmony rather than in isolation, we can only conclude that there is no ambiguity on the issue of personal guaranty by Jerry Avery. See *Jenkins v. T.S.I. Holdings, Inc.*, 268 Kan. 623, 635, 1 P.3d 891 (2000). Accordingly, the district court erred in concluding otherwise and in considering parol evidence to resolve the perceived ambiguity.

Our conclusion is further buttressed by Kansas authorities that have held that the substance of an agreement rather than the form of the signature block governs the interpretation of an agreement. Among these authorities is *McBride Electric, Inc. v. Putt's Tuff, Inc.*, 9 Kan. App. 2d 548, 685 P.2d 316 (1984), where the court rejected an argument that inclusion of corporate titles behind their names in the signature block shielded the individual guarantors from individual liability. The court stated:

"To accept defendants' argument would elevate form over substance and allow them to escape by subterfuge a clear expression of personal liability. It would also have the untenable result of making the guarantor of the note the same corporation which was primarily liable thereon. Such a promise of guaranty would be illusory only; we cannot interpret the guaranty provision in such an illogical manner." 9 Kan. App. 2d at 554-55.

Another Kansas case, *Consolidated Beef Industries, Inc. v. Schuyler*, 239 Kan. 38, 43-44, 716 P.2d 544 (1986), adopted the reasoning in *Ricker v. B-W Acceptance Corporation*, 349 F.2d 892 (10th Cir. 1965) (applying New Mexico law), that the addition of the signer's corporate position in the execution block of a contract does not necessarily preclude a finding that the signer intended to become personally liable for any personal obligations clearly expressed in the document. The *Consolidated Beef* case relied on the

language of the agreement that indicated that the signer "intended that he be personally bound to pay any debt owed by" the debtor. 239 Kan. at 44. These cases are consistent with authorities from other jurisdictions. See, *e.g.*, *Beck v. Haines Terminal & Highway Co.*, 843 P.2d 1229 (Alaska 1992); *Threlkel v. Shenanigan's, Inc.*, 881 P.2d 674 (Nev. 1994); *Taylor-Made Hose, Inc. v. Wilkerson*, 21 S.W.3d 484 (Tex. App. 2000); *Appliance & Heating Supply v. Telaroli*, 682 P.2d 867 (Utah 1984); *contra Addison State Bank v. Nat'l Maint. Mgmt.*, 174 Ill. App. 3d 857, 860, 529 N.E.2d 30 (1988); *Wired Music, Inc., v. Great River Steamboat Co.*, 554 S.W.2d 466 (Mo. App. 1977).

Given the unique and particular facts of this case, we conclude that a somewhat equivocal signature block does not necessarily create ambiguity in an instrument that is substantively clear in providing for personal guaranties. As in *McBride*, to accept Avery's argument would elevate form over substance and allow him to escape by subterfuge a clear expression of personal liability.

*The District Court Erred in Construing and Applying the Statute of Frauds*

The district court held that the Zukels' claim was barred by the statute of frauds, K.S.A. 33-106, which provides in pertinent part:

"No action shall be brought whereby to charge a party upon any special promise to answer for the debt, default or miscarriage of another person . . . or upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing."

At the outset we note that given our conclusion regarding the irregularities in the execution block and the lack of ambiguity of the subject contract, this issue is no longer directly material to this appeal; we have concluded that the agreement was in writing and was signed by the party to be charged.

Even if we were to apply the statute, however, we would be inclined to hold that it does not bar the Zukels' action. It is a well accepted principle of law that the statute of frauds was enacted to

prevent fraud and injustice, not to foster or encourage it, and a court of equity will not ordinarily permit its use as a shield to protect fraud or enable one to take advantage of his own wrongdoing. *Bank of Alton v. Tanaka*, 247 Kan. 443, 452, 799 P.2d 1029 (1990).

Although we have ruled that parol evidence was inadmissible on the issue of contract construction, that same evidence is relevant and admissible on the issue of the statute of frauds defense. The evidence demonstrates that to bar the Zukels' claim would be to foster fraud by Avery. We observe that this evidence shows: *first,* that when the Zukels learned of the involvement of a corporate entity, they felt they needed personal guaranties and discussed this with Avery, who did not deny generally discussing the subject; *second,* that Zukels initially presented a form of agreement drafted by their attorney but Avery rejected it as too complicated and expensive and offered to draft the agreement; *third,* that the addendum was requested by the Zukels, who expressed concern that the members with personal liability be identified; *and finally,* that Zukels would never have executed this agreement without the personal guarantee.

Considering this additional evidence, we conclude that this is indeed a case where the application of the statute of frauds as a bar to the Zukels' claim would work a substantial injustice. The district court erred in construing and applying the statute.

Reversed and remanded with instructions to enter judgment for the Zukels against Avery on the personal guarantee.

MALONE, J., concurring in part and dissenting in part:

I concur with the majority's conclusion that the district court erred in construing and applying the statute of frauds, K.S.A. 33-106. The Zukels' claim against Avery is not barred solely by the statute of frauds.

However, I dissent from the majority's conclusion that the purchase agreement was unambiguous. An ambiguity existed between the substantive language of the contract and the manner in which it was executed. The trial court also believed this created an ambiguity and, thus, the trial court considered parole evidence in an attempt to determine the intent of the parties. The trial court found

that the plaintiffs failed to meet their burden of establishing that Avery was to be personally liable under the contract. While I may disagree with the trial court's conclusion, the trial court's factual determination is supported by substantial competent evidence. Based upon the appropriate standard of review, I would affirm the trial court's ruling.