(137 P.3d 508)
No. 94,893

CITY OF ARKANSAS CITY, KANSAS, A MUNICIPAL CORPORATION, *Appellee*, v. RONALD D. BRUTON and REBECCA A. BRUTON, HUSBAND AND WIFE, *Appellants*.

Opinion filed July 7, 2006.

*Robert D. Wilson*, of Law Offices of Wilson & Brewer, of Arkansas City, for appellants.

*Alvin D. Herrington* and *Edward Keeley*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, and *Otis W. Morrow*, of Arkansas City, for appellee.

Before HILL, P.J., GREENE, J., and BRAZIL, S.J.

GREENE, J.: Ronald D. and Rebecca A. Bruton (Brutons) appeal the district court's summary judgment in favor of the City of Arkansas City in this complex litigation regarding the scope of an easement and involving claims and counterclaims seeking declaratory and injunctive relief, together with inverse condemnation damages, as a result of the City's improvements of a dike being

maintained across the Brutons' property. Concluding that the easement should be construed more narrowly than did the district court and that a genuine issue of material fact precluded summary judgment, we reverse and remand for further proceedings.

### Factual and Procedural Background

In 1935, the Brutons' predecessors in interest granted the City certain rights to construct and maintain a dike across their 5.4 acre tract of realty adjacent to the Arkansas River. The instrument of conveyance stated in material part:

"[F]irst parties hereby grant, sell, warrant and convey to second party, its successors and assign forever, a right of way and easement with the right, privilege and authority to said party of the second part, its successors and assigns to construct and maintain a dike for the purpose of protecting said city and its inhabitants from damage by flood waters coming from the Arkansas River, in, on, over, through and across the following described lands in Cowley County, Kansas . . . .

"It is understood and agreed that said dike is to be constructed and maintained in accordance with plans and specifications prepared by the U.S. Army Engineers, which plans and specifications have been examined and approved by first parties."

In 2000, the City and the U.S. Army Corps of Engineers sought to make improvements to the dike and brought an action against the Brutons, who had purchased the realty in 1994, alleging that the Brutons "hindered and obstructed" the planned improvements and seeking declaratory and injunctive relief together with damages for delay. The Brutons counterclaimed, alleging a trespass and an unlawful taking of their land and seeking declaratory and injunctive relief together with damages.

In November 2003, the district court filed a memorandum "for the purpose of resolving the primary legal question at issue so that the parameters of future proceedings may be more well defined." The court recognized that this decision was "prior to all evidence being presented." The court noted that the original dike in question "did not cover the entire 5.4 acres but ran parallel to the north side of the Arkansas River and covered approximately one-third of the 5.4 acres." The new structure, however, is "higher and comes closer to the Brutons' residence." The court concluded that

"[n]o more should be read into this opinion except the fact that evidence concerning any change in the size and shape of the dike is relevant, as the City did not have authority under the easement to make improvements to the dike which might encroach anywhere and everywhere upon the 5.4 acres making up the entire servient estate."

On August 16, 2004, the City filed a motion to dismiss the Brutons' trespass claim based upon their failure to comply with K.S.A. 2005 Supp. 12-105b(d), requiring filing of written notice of claim under the Kansas Tort Claims Act. See K.S.A. 75-6101 *et seq*. This motion was eventually granted by the court and is not an issue of this appeal. The City then moved for summary judgment on the Brutons' remaining claims and requested the court reconsider the prior ruling regarding its lack of "authority under the subject easement to make improvements to the dike which might encroach anywhere and everywhere upon the 5.4 acres . . . ."

On August 31, 2004, the Brutons filed their memorandum in opposition to the City's motion for summary judgment, supported by affidavits, maps, a description of the improvement project, construction drawings of the improvements completed, and deposition excerpts from the testimony of Arkansas City's city manager regarding the project and changes in the physical dimensions (size and shape) of the dike after the improvements were made. In response to the Brutons' memorandum, the City filed an extensive *amended* statement of uncontroverted facts in support of its motion, which included the concession that although the new structure was higher and wider, the improvements were within the language and scope of the easement. Additionally, the City noted that while riprap was added to the river side of the levee and seepage berms and borrow pits now encompassed more of the original levee structure, all the improvements were consistent with the purpose of the easement, which remained to "protect the city and its inhabitants from damage by flood waters coming from the Arkansas River."

Numerous amended memoranda followed, some of which were filed *after* the hearing on all pending motions, with additional proposed uncontroverted factual statements and responses thereto. In total, the record on appeal contains some 10 sets of uncontroverted

facts and responses, making it difficult to ascertain which facts, if any, and in what terminology, are any such factual statements truly uncontroverted for purposes of summary judgment. In fact, it would appear that the district court "tried" this case by considering these as successive motions for summary judgment.

On May 9, 2005, the district court entered summary judgment against the Brutons, reciting 22 paragraphs of uncontroverted facts and the following material conclusions of law:

"The provision of the subject easement that states the City may 'construct and maintain a dike for the purpose of protecting said city and its inhabitants from damage by flood waters', standing alone, is not ambiguous. The word 'maintain' has a plain and generally accepted meaning. Webster's New World Dictionary defines the word 'maintain' as 'to keep or keep up; to keep in a certain condition or position, esp. of efficiency, good repair, etc.; preserve.'

"However, the provision of the easement that states 'said dike is to be constructed and maintained in accordance with plans and specifications prepared by the U.S. Army Corps of Engineers' is ambiguous. The Brutons contend that any maintenance of 'said dike' must be the dike as configured and designed in 1935.

"Because this last referred-to clause of the easement is ambiguous, the court must interpret the easement's terms in light of the apparent purpose of the contract as a whole, the rules of contract construction and, if available, extrinsic evidence of intent and meaning. See *Williston on Contracts*, 4th Ed. § 30.7, p. 90-91. However, in the absence of any relevant extrinsic evidence, any ambiguity is to be resolved by the court as a matter of law. *Id.* § 30.7, 91-92.

. . . .

"It is clear that the main purpose of the easement is to protect the city and its inhabitants from flood waters. If what is reasonably contemplated as the scope of the easement is considered in light of its main purpose, it is reasonable to assume that the grantors of the 1935 easement reasonably foresaw that the size and configuration of the levee might change and that the intended scope of the easement would encompass that potential change.

. . . .

"At this point the reader must be wondering how this decision can be reconciled or read in harmony with the court's earlier opinion on the scope of the easement in question. . . .

"The court stands by its previous statement of law that generally, when the character and location of an easement are once definitely fixed, no *material* changes can be made by either party without the other's consent. This general statement of the law was made without consideration of the other language in the subject easement that effect its scope.

"Whether there has been a *material* change in the character or location of an easement is dependent upon whether the use of the easement is confined to the

*purpose* for which it was granted. The change in the configuration of the levee in this case is within the easement's stated purpose. If the City had sought to utilize the entire 5.4 acres, the court's decision might be different. However, that is not the case and the issue need not be addressed."

The Brutons timely appeal.

### *Standard of Review*

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is not genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. On appeal, an appellate court must apply the same rules, and where reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 788, 107 P.3d 1219 (2005); see K.S.A. 60-256.

### *Did the District Court Err in Concluding that the 1935 Easement Granted the City the Authority to Construct the 2000 Improvements?*

The Brutons argue that the district court erred in concluding as matters of law that the easement was ambiguous, that the changes to the size and configuration of the dike were "reasonably foreseeable," and that these changes were not "material." The Brutons essentially argue that the district court's ultimate reliance on the stated purpose of the easement renders meaningless and ineffective the instrument's numerous references to the "dike" and the "plans and specifications . . . approved by the parties." We agree with the Brutons, generally concluding that the district court erred in finding the instrument ambiguous, focused exclusively on the

stated purpose and ignored the specific express restrictions imposed on the scope and location of the easement, and failed to recognize that a genuine issue of material fact precluded summary judgment.

To ascertain the meaning of a written instrument, we begin by examining the language within the four corners of the instrument, considering all pertinent provisions rather then focusing on a singular provision. See *Zukel v. Great West Managers, LLC*, 31 Kan. App. 2d 1098, Syl. ¶ 5, 78 P.3d 480, *rev. denied* 277 Kan. 928 (2004). The character and extent of the rights created by a grant of easement is determined by construction of the language of the grant and by the extent of the use made of the dominant tenement at the time of the grant. *Potter v. Northern Natural Gas Co.*, 201 Kan. 528, 531, 441 P.2d 802 (1968).

The scope of the easement here is clearly specified as the "right, privilege and authority . . . to construct and maintain a dike" which would "be constructed and maintained in accordance with plans and specifications . . . examined and approved . . . ." These 1935 plans and specifications were not in dispute, and it is not contended that they were ambiguous in any manner. The purpose of the construction and maintenance was "to protect said city and its inhabitants from damage by flood waters." We fail to conceive how these provisions could be subject to more than one meaning; the parties clearly expressed the scope and location of the easement by reference to specific plans and specifications, and they further expressed the purpose of the rights obtained by the City to be flood protection. Because the instrument was not subject to more than one meaning, we conclude the district court erred in concluding that it was ambiguous. See *Zukel*, 31 Kan. App. 2d 1098, Syl. ¶ 3.

Interestingly, the City concedes that the instrument is not ambiguous, but argues that the instrument

"should have been construed to mean that the 'dike was to be maintained for the purpose of protecting the City and its inhabitants from damage from flood waters.' This is because the provision should be construed in harmony with the express purpose set forth for the construction and maintenance of the dike, namely, 'to protect said city and its inhabitants from damage by flood waters,' which the district court finds is not ambiguous."

We agree that the scope and location provisions should be construed in harmony with the purpose provision. See *Starr v. Union Pacific Ry. Co.*, 31 Kan. App. 2d 906, Syl. ¶ 1, 75 P.3d 266, *rev. denied* 276 Kan. 970 (2003). Contrary to the City's argument, however, this does not require that in construing the instrument some 70 years after its making, we must ignore the location specifics and narrow our focus to the purpose provision. Indeed, the Brutons suggest that the City's proposed construction of the instrument would have the purpose provision swallow the location specifics. We agree. See *Zukel*, 31 Kan. App. 2d 1098, Syl. ¶¶ 2, 3, 5.

In arguing that the location specifics are subordinate to the purpose of the easement, the City relies upon a host of authorities stating that easements should be interpreted "to carry out the *purpose* for which the easement was created." (Emphasis added.) Restatement (Third) of Property: Servitudes § 4.1(1) (1998); see *Spears v. Kansas City Power & Light Co.*, 203 Kan. 520, 527-28, 455 P.2d 496 (1969). Indeed, we have no quarrel with this rule of law, but the City fails to recognize that it is limited to those instruments that do not specifically limit the scope of the right. For example, the City cites and quotes another provision within the Restatement as follows:

> "*Except as limited by the terms of the servitude* determined under § 4.1, the holder of an easement . . . is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude. The manner, frequency, and intensity of the use may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate . . . benefitted by the servitude." (Emphasis added.) Restatement (Third) of Property: Servitudes § 4.10.

In fact, the law is clear that servitudes may be restricted by specific language such as that appearing in the subject instrument. When the location or dimensions of an easement are specified in the creating instrument, the specificity of the location or dimensions may indicate the parties' intent that no deviation be permitted, even if the location or dimensions eventually prove excessive or inadequate for the intended purposes. Restatement (Third) of Property: Servitudes § 4.8, Effect of Specifying Location or Dimensions, p. 570. This principle is consistent with the established

rule that an easement with a fixed location cannot be substantially changed or relocated without the express or implied consent of the owners of both the servient estate and the dominant estate, absent reservations contained in the instrument creating the easement. No use may be made of an easement that is expressly created which is different from the use established at the time of its creation and which imposes an additional burden upon the servient estate. See 25 Am. Jur. 2d, Easements and Licenses § § 69 and 71.

Our Supreme Court has embraced these rules in *Aladdin Petroleum Corporation v. Gold Crown Properties, Inc.*, 221 Kan. 579, 561 P.2d 818 (1977), where the court strictly construed an easement that set forth in the instrument of conveyance a specific location. The court relied upon treatise authority in stating:

"The law appears to be settled that where the width, length and location of an easement for ingress and egress have been expressly set forth in the instrument the easement is specific and definite. The expressed terms of the grant or reservation are controlling in such case and considerations of what may be necessary or reasonable to a present use of the dominant estate are not controlling." 221 Kan. at 584 (citing 3 Tiffany, Real Property § 805, pp. 331-32 [3d ed. 1939], and 28 C.J.S., Easements § 75, p. 753).

Accordingly, we conclude that the district court erred in finding the instrument ambiguous and in construing it consistent with its stated purpose but without regard to its express limitations on location. Moreover, based upon the lack of any ambiguity in the instrument, we conclude that the district court erred in determining the materiality and foreseeability of the designed improvements in 2000. Not only are such findings factual in nature and inappropriate for summary judgment, they are irrelevant in the absence of ambiguity. When the language of the written instrument is clear and can be carried out as written, there is no room for rules of construction. The intention of the parties and the meaning of the instrument are determined from the instrument itself. *Zukel*, 31 Kan. App. 2d at 1101.

We hold that the instrument here specifically defines the scope and location of the easement as "construction and maintenance" of a dike "to be constructed and maintained in accordance with" the plans and specifications approved by the parties to the instru-

ment in 1935. Deviations, changes, alterations, or modifications thereafter in the dike must be examined *both* for consistency with those 1935 plans and specifications and with the expressed purpose that the dike protect the inhabitants of the City from flood damage.

## *Did the District Court Err in Concluding There Were No Genuine Issues of Material Fact Precluding Summary Judgment?*

The Brutons argue that they adequately controverted the City's proposed fact statement that "the proper cross section profile for the 1935 levee on the Bruton property was Typical Section No. 3, Station 188." They argue that although they presented no engineering evidence, they

"submitted evidence based upon the actual information contained in the 1935 plans, which were admitted as evidence. The plans did not show any existing railroad embankment on the Bruton property whereas the plans for Typical Section No. 3 shows the 1935 levee improvement being added to a railroad embankment. Additionally, Station 188 was located east of U.S. Highway 77 and the Bruton property is located west of U.S. Highway 77."

The Brutons then argue that the district court "served as a finder of fact" when it found that "no matter which typical section best fits the Bruton's property, they all indicate a geometrical footprint which encompasses the levee embankment, berm and borrow pit." The Brutons note that this "fact" was beyond the submissions of the parties and premised upon assumptions dependent on features peculiar to Typical Section No. 3. We generally agree with the Brutons but conclude that our legal construction of the instrument of conveyance frames other material fact issues requiring further proceedings.

Our attempt to discern an accurate picture of uncontroverted facts is obfuscated by multiple submissions, amended fact statements, shifting positions, and supplemental expert reports intended both to respond and to argue factual matters. The City initially did not suggest that the improvements constituted maintenance, but rather that the improvements were for the stated purpose of protecting the City and its inhabitants from damage by flood waters. In response the Brutons submitted 18 additional un-

controverted facts establishing that the 2000 improvements were substantially different from the initial construction on their property and that "the dike as constructed in 2001-2002 on the Bruton property was not maintenance and repair of the then existing dike."

The City then amended its uncontroverted facts, expanding the prior 7 concise statements to 24 voluminous statements with subparts and responding to the Brutons' additional statements with extensive argument based upon the report of its expert; notably, in response to the Brutons' suggestion that the improvements were not maintenance of the existing dike, the City stated that "all of the improvements made by the City to the existing levee structure were to maintain the levee for the *purpose* expressly stated in the easement," citing its expert report that the "objectives" of the 2000 improvements were "designed to maintain the *purpose* of the levee system." (Emphasis added). The Brutons then controverted the amended statements of the City, suggesting that the "features of the 2000-01 levy project constitutes an improvement of the level of flood protection by the construction of a wider and taller levy and related improvements."

The City then responded with yet another memorandum supported by a *supplemental* report of its expert engineer, which refined the engineering judgments previously submitted, purported to construe the easement, and reiterated that the improvements were for the stated purpose of the easement. For reasons not explained in the record, the City then followed up this response with yet another motion to file additional uncontroverted facts and attached a statement containing approximately 12 additional facts, all supported by a *second supplemental* report of the expert engineer. The Brutons responded but did not controvert that the 2000 improvements included additional acreage for the levee embankment of .914 acres, an increased height of 11 feet, and an additional riverside width of 103 feet.

What does this extensive but convoluted examination of the summary judgment pleadings accomplish? We conclude that the manner in which the parties approached summary judgment was not in keeping with the letter or the spirit of Supreme Court Rule 141 (2005 Kan. Ct. R. Annot. 205). The Rule clearly contemplates a

singular memorandum by the movant with uncontroverted contentions of fact, followed by a singular responsive memorandum by the nonmoving party that can include controversions of the movant's factual contentions, together with statements of additional issues of material fact precluding summary judgment, and these additional fact statements may warrant a response by the moving party. No further memoranda containing amended statements and responses are contemplated, nor is it the better practice to permit ever-shifting amendments, refinements, and argumentative posturing prior to summary motion resolution.

For any party to resubmit new or additional statements supported by supplemental expert reports is akin to controverting statements supported by a deposition with a contemporary and contradictory affidavit of the deponent, a practice long prohibited. See *Mays v. Ciba-Geigy Corp.*, 233 Kan. 38, Syl. ¶ 1, 661 P.2d 348 (1983); see also *M.S.W., Inc., v. Marion County Bd. of Zoning Appeals*, 29 Kan. App. 2d 139, 147, 24 P.3d 175, *rev. denied* 272 Kan. 1419 (2001) (adding evidence to the record to create issues of material fact contravenes the purpose of summary judgment). We deem the numerous submissions of amended and supplemental materials as evidence that material issues of fact precluded summary judgment and warranted a trial on the merits. It is no wonder that the district court found it difficult to sort out these materials in the context of a summary judgment proceeding. Cases are not to be tried by successive summary judgment motions.

We note that the Brutons presented no expert engineering testimony either in support of their positions or in response to the City's positions. As noted during oral argument, the meaning and effect of engineering plans and specifications are difficult if not impossible to ascertain in the absence of expert assistance. The Brutons' controversion of a fact statement encompassing which aspects of the plans best represents or typifies the features of the construction across the Bruton property may be weak in relation to the City's engineering testimony, but neither the district court nor this court can or should weigh the relative factual positions of the parties in the context of summary judgment. See *Schneider v.*

*Washington National Ins. Co.*, 200 Kan. 380, 387, 437 P.2d 798 (1968).

More important, however, is that our legal construction of the instrument of conveyance frames a key material issue of fact: Do the City's improvements of 2000 constitute "maintenance" "in accordance with the plans and specifications" that were approved by the parties in 1935? We have attempted to analyze the various statements of uncontroverted fact and responses thereto and conclude that this key fact was never addressed directly. Instead, the parties' submissions addressed specific aspects of both the original and the improved dike system, but the City consistently argued only that the improvements were consistent with the *purpose* of the original dike.

We hold that the Brutons' response to the challenged material fact regarding design typicality, although weak, was sufficient to preclude summary judgment. More importantly, however, we conclude that the sheer volume of ever-shifting fact statements and responses were indicative of genuine issues of material fact that precluded summary judgment. Finally, we note that the essential material fact remains: Do the 2000 improvements constitute maintenance in accordance with the 1935 plans and specifications? This question is *not* answered by conclusory statements that the improvements were consistent with the *purpose* of the 1935 easement, but we do not understand the Brutons' position as disputing this fact. The more difficult question is whether the improvements constitute maintenance *in accordance with* the 1935 plans and specifications, and this question will likely require engineering opinions from both parties and will undoubtedly be contentious. See *Seaman U.S.D. No. 345 v. Casson Constr. Co.*, 3 Kan. App. 2d 289, 292-93, 594 P.2d 241 (1979) (expert testimony is often required to establish practices and interpret scientific or professional documents in disciplines that use specialized terminologies and technologies). Noting that neither side apparently demanded a jury, we remand in order that the court can address this fact question after a trial on the merits.

In summary, we conclude that the district court erred in construing the 1935 instrument of conveyance. The instrument is not

ambiguous in providing that the scope of the easement is the construction and maintenance of a dike in accordance with approved plans and specifications and for the purpose of flood protection. We also conclude that at least one if not numerous genuine issues of material fact precluded summary judgment. Whether the improvements of 2000 were within the express scope of the subject easement is a question of fact to be addressed by the court after a trial on the merits.

Reversed and remanded with directions.